# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: 1:10−cv−00862−RWR

| | |
|---|---|
| DANIEL et al v. FULWOOD et al | Date Filed: 05/25/2010 |
| Assigned to: Judge Richard W. Roberts | Date Terminated: 09/30/2011 |
| Case: 1:06−cv−01650−ESH | Jury Demand: None |
| Cause: 42:1983 Prisoner Civil Rights | Nature of Suit: 550 Prisoner: Civil Rights |
| | Jurisdiction: U.S. Government Defendant |

**Plaintiff**

**ROY A. DANIEL**     represented by     **Ivy Ann Finkenstadt**
Washington Lawyers' Committee for Civil
Rights and Urba
11 Dupont Circle, NW
Suite 400
Washington, DC 20036
(202) 319−1000
Fax: (202) 319−1010
Email: ivy.lange@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth John Pfaehler**
SNR DENTON US LLP
1301 K Street, NW
Suite 600 East Tower
Washington, DC 20005
(202) 408−6468
Fax: (202) 408−6399
Email: kenneth.pfaehler@snrdenton.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Philip J. Fornaci**
WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS
DC Prisoners' Project
11 Dupoint Circle, NW
Suite 400
Washington, DC 20036
(202) 319−1000
Fax: (202) 319−1010
Email: philip_fornaci@washlaw.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**ALFONSO TAYLOR**     represented by

Ivy Ann Finkenstadt
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Kenneth John Pfaehler
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Philip J. Fornaci
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**HAROLD VENABLE**                     represented by   **Ivy Ann Finkenstadt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth John Pfaehler**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Philip J. Fornaci**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**PERCY JETER**                        represented by   **Ivy Ann Finkenstadt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth John Pfaehler**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Philip J. Fornaci**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**ABDUS–SHAHID ALI**                   represented by   **Ivy Ann Finkenstadt**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Kenneth John Pfaehler**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Philip J. Fornaci**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**WILLIAM TERRY**
*On Behalf of Themselves and All Others*
*Similarly Situated*

represented by    **Ivy Ann Finkenstadt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth John Pfaehler**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Philip J. Fornaci**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

<u>Defendant</u>

**ISAAC FULWOOD, JR.**
*Chairman of the United States Parole*
*Commission*

represented by    **Alan R. Burch**
U.S. ATTORNEY'S OFFICE
Civil Division
555 Fourth Street, NW
Washington, DC 20530
(202) 514–7204
Fax: (202) 514–8780
Email: alan.burch@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michelle Lo**
U.S. ATTORNEY'S OFFICE
555 Fourth Street, NW
Washington, DC 20530
(202) 514–5134
Fax: (202) 514–8780
Email: Michelle.Lo2@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**CRANSTON J. MITCHELL**
*Commissioner of the United States Parole*
*Commission*

represented by **Alan R. Burch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michelle Lo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**PATRICIA K. CUSHWA**
*Commissioner of the United States Parole*
*Commission*

represented by **Alan R. Burch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michelle Lo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 05/25/2010 | 1 | | COMPLAINT against PATRICIA K. CUSHWA, ISAAC FULWOOD, JR, CRANSTON J. MITCHELL ( Filing fee $ 350, receipt number 4616029971) filed by ABDUS–SHAHID ALI, ALFONSO TAYLOR, WILLIAM TERRY, ROY A DANIEL, HAROLD VENABLE, PERCY JETER. (Attachments: # 1 Civil Cover Sheet)(jf, ) (Entered: 05/26/2010) |
| 05/25/2010 | | | SUMMONS (5) Issued as to PATRICIA K. CUSHWA, ISAAC FULWOOD, JR, CRANSTON J. MITCHELL, U.S. Attorney and U.S. Attorney General (jf, ) (Entered: 05/26/2010) |
| 05/25/2010 | 2 | | NOTICE OF RELATED CASE by ABDUS–SHAHID ALI, ROY A DANIEL, PERCY JETER, ALFONSO TAYLOR, WILLIAM TERRY, HAROLD VENABLE. Case related to Case No. 06–1650. (jf, ) (Entered: 05/26/2010) |
| 06/01/2010 | 3 | | Case randomly reassigned to Judge Ricardo M. Urbina. Judge Ellen S. Huvelle no longer assigned to the case. (gt, ) (Entered: 06/01/2010) |
| 06/07/2010 | 4 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to ISAAC FULWOOD, JR served on 5/28/2010, answer due 7/27/2010. (Pfaehler, Kenneth) (Entered: 06/07/2010) |
| 06/07/2010 | 5 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to CRANSTON J. MITCHELL served on 5/28/2010, answer due 7/27/2010. (Pfaehler, Kenneth) (Entered: 06/07/2010) |
| 06/07/2010 | 6 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to PATRICIA K. CUSHWA served on 5/28/2010, answer due 7/27/2010. |

| | | | |
|---|---|---|---|
| | | | (Pfaehler, Kenneth) (Entered: 06/07/2010) |
| 06/07/2010 | 7 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on Attorney General. Date of Service Upon Attorney General 05/28/10. (Pfaehler, Kenneth) (Entered: 06/07/2010) |
| 06/07/2010 | 8 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the US Attorney. (Pfaehler, Kenneth) (Entered: 06/07/2010) |
| 07/22/2010 | 9 | | NOTICE of Appearance by Michelle Lo on behalf of PATRICIA K. CUSHWA, ISAAC FULWOOD, JR, CRANSTON J. MITCHELL (Lo, Michelle) (Entered: 07/22/2010) |
| 07/22/2010 | 10 | | WITHDRAWN PURSUANT TO NOTICE FILED 8/6/2010..... MOTION to Stay, Consent MOTION for Extension of Time to File Answer by PATRICIA K. CUSHWA, ISAAC FULWOOD, JR, CRANSTON J. MITCHELL (Attachments: # 1 Text of Proposed Order)(Lo, Michelle) Modified on 8/9/2010 (znmw, ). (Entered: 07/22/2010) |
| 07/22/2010 | 11 | | NOTICE of Appearance by Alan Burch on behalf of PATRICIA K. CUSHWA, ISAAC FULWOOD, JR, CRANSTON J. MITCHELL (Burch, Alan) (Entered: 07/22/2010) |
| 07/26/2010 | | | MINUTE ORDER deferring ruling on 10 motion to stay; granting 10 motion for extension of time to answer PATRICIA K. CUSHWA answer due 9/27/2010; ISAAC FULWOOD, JR answer due 9/27/2010; CRANSTON J. MITCHELL answer due 9/27/2010. Upon consideration of the defendants' motion to stay or, in the alternative, for an extension of time to respond to the complaint, it is hereby ORDERED that the motion for an extension of time is GRANTED and the defendants shall respond to the complaint on or before September 27, 2010; and it is FURTHER ORDERED that the court will defer ruling on the motion to stay pending an opposition and reply, deadlines for which are articulated in the court's Local Rules. SO ORDERED. Signed by Judge Ricardo M. Urbina on 07/26/2010. (EN, ) Modified on 7/26/2010 (EN, ) to reflect that this is a minute order. (Entered: 07/26/2010) |
| 07/27/2010 | | | Set/Reset Deadlines: Answer to the complaint due on or before 9/27/2010, (tg, ) (Entered: 07/27/2010) |
| 08/06/2010 | 12 | | NOTICE OF WITHDRAWAL OF MOTION by PATRICIA K. CUSHWA, ISAAC FULWOOD, JR, CRANSTON J. MITCHELL (Lo, Michelle) (Entered: 08/06/2010) |
| 08/09/2010 | 13 | | NOTICE of Appearance by Ivy Ann Finkenstadt on behalf of ABDUS–SHAHID ALI, ROY A. DANIEL, PERCY JETER, ALFONSO TAYLOR, WILLIAM TERRY, HAROLD VENABLE (Finkenstadt, Ivy) (Entered: 08/09/2010) |
| 08/09/2010 | 14 | | ENTERED IN ERROR.....MOTION for Leave to Appear Attorney by ABDUS–SHAHID ALI, ROY A. DANIEL, PERCY JETER, ALFONSO TAYLOR, WILLIAM TERRY, HAROLD VENABLE (Fornaci, Philip) Modified on 8/9/2010 (tg, ). (Entered: 08/09/2010) |
| 08/09/2010 | 15 | | NOTICE of Appearance by Philip J. Fornaci on behalf of ABDUS–SHAHID ALI, ROY A. DANIEL, PERCY JETER, ALFONSO TAYLOR, WILLIAM TERRY, HAROLD VENABLE (Fornaci, Philip) (Entered: 08/09/2010) |

| | | | |
|---|---|---|---|
| 08/09/2010 | | | NOTICE OF CORRECTED DOCKET ENTRY: 14 MOTION for Leave to Appear Attorney was entered in error. Counsel refiled said pleading, using the proper ECF event to file a Notice of Entry of Appearance, under docket entry number 15 . (tg, ) (Entered: 08/09/2010) |
| 08/20/2010 | 16 | | Consent MOTION for Extension of Time to *File Plaintiffs' Motion for Class Certification* by ABDUS−SHAHID ALI, ROY A. DANIEL, PERCY JETER, ALFONSO TAYLOR, WILLIAM TERRY, HAROLD VENABLE (Attachments: # 1 Text of Proposed Order)(Pfaehler, Kenneth) (Entered: 08/20/2010) |
| 08/23/2010 | | | MINUTE ORDER granting 16 motion for extension of time. Upon consideration of the plaintiffs' motion for an extension of time to file their motion for class certification, it is hereby ORDERED that the motion is GRANTED and the plaintiffs' motion for class certification is due on or before October 25, 2010. SO ORDERED. Signed by Judge Ricardo M. Urbina on 08/23/2010. (EN, ) (Entered: 08/23/2010) |
| 08/23/2010 | | | Set/Reset Deadlines: Plaintiff's motions for class certification due by 10/25/2010. (tg, ) (Entered: 08/23/2010) |
| 09/27/2010 | 17 | | MOTION to Dismiss *&supporting Memorandum* by PATRICIA K. CUSHWA, ISAAC FULWOOD, JR, CRANSTON J. MITCHELL (Attachments: # 1 Exhibit 1−−Report, # 2 Exhibit 2−−DCMR, # 3 Exhibit 3−−1991 Policy Guideline)(Burch, Alan) (Entered: 09/27/2010) |
| 10/01/2010 | 18 | | NOTICE *of Firm Name Change for Plaintiffs' Counsel* by ABDUS−SHAHID ALI, ROY A. DANIEL, PERCY JETER, ALFONSO TAYLOR, WILLIAM TERRY, HAROLD VENABLE (Pfaehler, Kenneth) (Entered: 10/01/2010) |
| 10/07/2010 | 19 | | Consent MOTION for Extension of Time to File Response/Reply as to 17 MOTION to Dismiss *&supporting Memorandum* by ABDUS−SHAHID ALI, ROY A. DANIEL, PERCY JETER, ALFONSO TAYLOR, WILLIAM TERRY, HAROLD VENABLE (Attachments: # 1 Text of Proposed Order)(Pfaehler, Kenneth) (Entered: 10/07/2010) |
| 10/08/2010 | | | MINUTE ORDER granting 19 motion for extension of time. Upon consideration of the plaintiffs' consent motion for an extension of time to oppose the defendants' motion to dismiss, it is hereby ORDERED that the plaintiffs' motion is GRANTED; and it is FURTHER ORDERED that the plaintiffs shall have up to and including November 15, 2010 to file their opposition to the defendants' motion to dismiss. SO ORDERED. Signed by Judge Ricardo M. Urbina on 10/08/10. (EN, ) (Entered: 10/08/2010) |
| 10/08/2010 | | | Set/Reset Deadlines: Plaintiffs' Opposition to Dispositive Motion due by 11/15/2010. (tg, ) (Entered: 10/08/2010) |
| 10/25/2010 | 20 | | Consent MOTION for Extension of Time to *file motion papers* by ABDUS−SHAHID ALI, ROY A. DANIEL, PERCY JETER, ALFONSO TAYLOR, WILLIAM TERRY, HAROLD VENABLE (Attachments: # 1 Text of Proposed Order)(Pfaehler, Kenneth) (Entered: 10/25/2010) |
| 11/12/2010 | | | MINUTE ORDER granting 20 motion for extension of time. Upon consideration of the plaintiffs' consent motion for an extension of the briefing deadlines, it is hereby ORDERED that the motion is GRANTED; and it is |

| | | | |
|---|---|---|---|
| | | | FURTHER ORDERED that the defendants shall have up to and including December 3, 2010 to file a reply in support of their motion to dismiss; and it is ORDERED that the plaintiffs shall have up to and including December 10, 2010 to file a motion for class certification. SO ORDERED. Signed by Judge Ricardo M. Urbina on 11/12/10. (EN, ) (Entered: 11/12/2010) |
| 11/12/2010 | | | Set/Reset Deadlines: Defendants' Reply in Support of their Dispositive Motion due by 12/3/2010. Plaintiffs' Motion for Class Certification due by 12/10/2010. (tg, ) (Entered: 11/12/2010) |
| 11/15/2010 | 21 | | Memorandum in opposition to re 17 MOTION to Dismiss *&supporting Memorandum* filed by ABDUS–SHAHID ALI, ROY A. DANIEL, PERCY JETER, ALFONSO TAYLOR, WILLIAM TERRY, HAROLD VENABLE. (Attachments: # 1 Text of Proposed Order Order)(Pfaehler, Kenneth) (Entered: 11/15/2010) |
| 12/03/2010 | 22 | | REPLY to opposition to motion re 17 MOTION to Dismiss *&supporting Memorandum* filed by PATRICIA K. CUSHWA, ISAAC FULWOOD, JR, CRANSTON J. MITCHELL. (Lo, Michelle) (Entered: 12/03/2010) |
| 12/10/2010 | 23 | | MOTION to Certify Class by ABDUS–SHAHID ALI, ROY A. DANIEL, PERCY JETER, ALFONSO TAYLOR, WILLIAM TERRY, HAROLD VENABLE (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1–Declaration of Stacy Litner, # 3 Text of Proposed Order)(Pfaehler, Kenneth) (Entered: 12/10/2010) |
| 12/23/2010 | 24 | | MOTION to Stay re 23 MOTION to Certify Class by PATRICIA K. CUSHWA, ISAAC FULWOOD, JR, CRANSTON J. MITCHELL (Attachments: # 1 Text of Proposed Order)(Lo, Michelle) (Entered: 12/23/2010) |
| 01/10/2011 | 25 | | Memorandum in opposition to re 24 MOTION to Stay re 23 MOTION to Certify Class filed by ABDUS–SHAHID ALI, ROY A. DANIEL, PERCY JETER, ALFONSO TAYLOR, WILLIAM TERRY, HAROLD VENABLE. (Attachments: # 1 Text of Proposed Order, # 2 Certificate of Service)(Pfaehler, Kenneth) (Entered: 01/10/2011) |
| 01/13/2011 | 26 | | REPLY to opposition to motion re 24 MOTION to Stay re 23 MOTION to Certify Class filed by PATRICIA K. CUSHWA, ISAAC FULWOOD, JR, CRANSTON J. MITCHELL. (Burch, Alan) (Entered: 01/13/2011) |
| 09/30/2011 | 27 | 37 | ORDER granting 17 the defendants' motion to dismiss. Signed by Judge Ricardo M. Urbina on 9/30/11. (TA) (Entered: 09/30/2011) |
| 09/30/2011 | 28 | 11 | MEMORANDUM OPINION granting 17 the defendants' motion to dismiss. Signed by Judge Ricardo M. Urbina on 9/30/11. (TA) (Entered: 09/30/2011) |
| 10/28/2011 | 29 | | MOTION to Alter Judgment as to 27 Order on Motion to Dismiss, 28 Memorandum &Opinion *Pursuant to Rule 59(e)* by ABDUS–SHAHID ALI, ROY A. DANIEL, PERCY JETER, ALFONSO TAYLOR, WILLIAM TERRY, HAROLD VENABLE (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Pfaehler, Kenneth) (Entered: 10/28/2011) |
| 11/08/2011 | 30 | | Consent MOTION for Extension of Time to File Response/Reply as to 29 MOTION to Alter Judgment as to 27 Order on Motion to Dismiss, 28 Memorandum &Opinion *Pursuant to Rule 59(e)* MOTION to Alter Judgment |

| | | | |
|---|---|---|---|
| | | | as to 27 Order on Motion to Dismiss, 28 Memorandum &Opinion *Pursuant to Rule 59(e)* by PATRICIA K. CUSHWA, ISAAC FULWOOD, JR, CRANSTON J. MITCHELL (Lo, Michelle) (Entered: 11/08/2011) |
| 11/23/2011 | 31 | | Memorandum in opposition to re 29 MOTION to Alter Judgment as to 27 Order on Motion to Dismiss, 28 Memorandum &Opinion *Pursuant to Rule 59(e)* MOTION to Alter Judgment as to 27 Order on Motion to Dismiss, 28 Memorandum &Opinion *Pursuant to Rule 59(e)* filed by PATRICIA K. CUSHWA, ISAAC FULWOOD, JR, CRANSTON J. MITCHELL. (Attachments: # 1 Text of Proposed Order)(Burch, Alan) (Entered: 11/23/2011) |
| 12/05/2011 | 32 | | REPLY to opposition to motion re 29 MOTION to Alter Judgment as to 27 Order on Motion to Dismiss, 28 Memorandum &Opinion *Pursuant to Rule 59(e)* MOTION to Alter Judgment as to 27 Order on Motion to Dismiss, 28 Memorandum &Opinion *Pursuant to Rule 59(e)* filed by ABDUS–SHAHID ALI, ROY A. DANIEL, PERCY JETER, ALFONSO TAYLOR, WILLIAM TERRY, HAROLD VENABLE. (Pfaehler, Kenneth) (Entered: 12/05/2011) |
| 04/20/2012 | | | Case randomly reassigned to Judge Rudolph Contreras. Judge Ricardo M. Urbina no longer assigned to the case. (gt, ) (Entered: 04/20/2012) |
| 04/23/2012 | | | Case directly reassigned to Judge Richard W. Roberts. Judge Rudolph Contreras no longer assigned to the case. (gt, ) (Entered: 04/23/2012) |
| 08/16/2012 | | | MINUTE ORDER: It is hereby ORDERED that the defendants' motion 30 for an extension of the deadline to respond to the motion to alter judgment be, and hereby is, GRANTED nunc pro tunc. Issued by Judge Richard W. Roberts on 08/16/2012. (DCL) (Entered: 08/16/2012) |
| 09/27/2012 | 33 | 38 | MEMORANDUM OPINION AND ORDER denying plaintiffs' motion 29 for reconsideration. Signed by Judge Richard W. Roberts on 09/27/2012. (DCL) (Entered: 09/27/2012) |
| 10/17/2012 | 34 | 9 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 27 Order on Motion to Dismiss, 28 Memorandum &Opinion, 33 Memorandum &Opinion by ABDUS–SHAHID ALI, ROY A. DANIEL, PERCY JETER, ALFONSO TAYLOR, WILLIAM TERRY, HAROLD VENABLE. Filing fee $ 455, receipt number 0090–3103607. Fee Status: Fee Paid. Parties have been notified. (Pfaehler, Kenneth) (Entered: 10/17/2012) |
| 10/18/2012 | 35 | | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid this date re 34 Notice of Appeal to DC Circuit Court,. (jf, ) (Entered: 10/18/2012) |

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

ROY A. DANIEL, et al.,                    )
                                          )
     Plaintiffs-Appellants,              )
                                          )
v.                                        )    Civil Action No. 10-862 (RWR)
                                          )
ISAAC FULWOOD, JR., et al.,               )
                                          )
     Defendants-Appellees.               )

## NOTICE OF APPEAL

Notice is hereby given that Roy A. Daniel, Alfonso Taylor, Harold Venable, Percy Jeter, Abdus-Shahid Ali and William Terry, the plaintiffs in the above captioned case, hereby appeal to the United States Court of Appeals for the District of Columbia Circuit from the Order entered in this action on the 30th day of September, 2011 (Docket No. 27), the Memorandum Opinion Granting the Defendants' Motion to Dismiss entered in this action on the 30th day of September, 2011(Docket No. 28), and the Memorandum Opinion and Order entered in this action on the 27th day of September, 2012 (Docket No. 33).

Dated: October 17, 2012              /s/ Kenneth J. Pfaehler
                                  Kenneth J. Pfaehler (DC 461718)
                                  SNR DENTON US LLP
                                  1301 K Street, N.W.
                                  Suite 600, East Tower
                                  Washington, D.C. 20005
                                  (202) 408-6468  Telephone
                                  (202) 408-6399  Fax

                                  Phil Fornaci (DC 434824)
                                  WASHINGTON LAWYERS' COMMITTEE
                                  FOR CIVIL RIGHTS & URBAN AFFAIRS
                                  11 Dupont Circle, N.W., Suite 400
                                  Washington, D.C. 20036
                                  (202) 319-1000 Telephone
                                  (202) 319-1010 Fax

                                  *Counsel for Plaintiffs-Appellants Roy A. Daniel, et al.*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on October 17, 2012, the foregoing Notice of Appeal was served, via the electronic filing system of the U.S. District Court for the District of Columbia, upon the following:

Michelle Lo, Esq.
*Michelle.Lo2@usdoj.gov*

Alan Burch, Esq.
*Alan.Burch@usdoj.gov*

/s/ Kenneth J. Pfaehler
Kenneth J. Pfaehler (D.C. Bar No. 461718)

25518937

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| ROY A. DANIEL *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 10-862 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 17 |
| | : | | |
| ISAAC FULWOOD, JR., Chairman of the | : | | |
| United States Parole Commission *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING THE DEFENDANTS' MOTION TO DISMISS

## I. INTRODUCTION

This motion comes before the court on the defendants' motion to dismiss. The plaintiffs are federal inmates who "were convicted of offenses against the District of Columbia that occurred on or before March 3, 1985," and the defendants are the Chairman and two Commissioners of the United States Parole Commission ("USPC"). The plaintiffs allege that, when determining whether the plaintiffs qualified for parole, the defendants violated the *Ex Post Facto* Clause of the Constitution by retroactively applying parole guidelines issued in 2000 ("2000 Guidelines"), instead of applying the regulations in place at the time of the plaintiffs' respective convictions ("1972 Regulations"). In addition, the plaintiffs allege that the defendants violated the Due Process Clause of the Fifth Amendment by denying them a fair parole review hearing.

Because the plaintiffs' allegations, accepted as true, do not plausibly suggest that retroactively applying the 2000 Guidelines created a significant risk of a longer incarceration period than applying the 1972 Regulations would have, the court grants the defendants' motion

to dismiss the plaintiffs' *ex post facto* claims. Similarly, because the parole regulations do not create a constitutionally protected liberty interest, the court grants the defendants' motion to dismiss the plaintiffs' due process claim.

## II. BACKGROUND

### A. Legal Shifts in Parole Regimes Between 1972 and 2000

The regulatory framework governing a federal inmate's suitability for parole in the District of Columbia has changed several times over the past forty years. From 1932 to 1997, the D.C. Parole Board ("the Board") retained discretion to determine when a prisoner would be suitable for parole. *See* D.C. CODE § 24-204 (1973). Regulations created in 1972 established several factors for the Board to evaluate when making parole determinations. *Id.* In 1985, the Board adopted further regulations that detailed and narrowed the scope of its discretion. D.C. MUN. REGS. tit. 28, § 100 (1987).

In 1997, responsibility for parole determinations was transferred to federal authority, so that the USPC began conducting parole hearings for D.C. inmates. D.C. CODE §§ 24-101 (2001 & Supp. 2005). In 2000, the United States Parole Commission issued new guidelines for determining whether an inmate is eligible for parole. *See generally* 63 Fed. Reg. 39172 (July 21, 1998). These guidelines lie at the heart of the plaintiffs' complaint. Because the differences among the various parole regimes are essential to the court's legal analysis, the court discusses these regulations in further detail below.

### 1. The 1972 Regulations

From 1932 to 1997, the D.C. Parole Board was vested with the authority to grant parole

2

to prisoners sentenced under D.C. law.  *See Austin v. Reilly*, 606 F. Supp. 2d 4, 8 (D.D.C. 2009).

Prior to 1972, the relevant provision of the District of Columbia Code ("D.C. Code") stated:

> Whenever it shall appear to the Board of Parole that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be, the Board may authorize his release on parole upon such terms and conditions as the Board shall from time to time prescribe.

*Id.* (quoting  D.C. CODE § 24-204 (1973)).

In 1972, the Board promulgated a set of regulations outlining a list of non-exclusive factors that it could consider when determining whether an inmate was suitable for parole. *Wilson v. Fulwood*, 772 F. Supp. 2d 246, 252 (D.D.C. 2011).  These regulations granted the Board "nearly complete discretion" to determine whether parole was appropriate.  *Id.*  The factors that the Board could consider when making parole decisions included:

> (a) The offense, noting the nature of the violation, mitigating or aggravating circumstances and the activities and adjustment of the offender following arrest if on bond or in the community under any presentence type arrangement;
>
> (b) Prior history of criminality noting the nature and pattern of any prior offenses as they may relate to the current circumstances;
>
> (c) Personal and social history of the offender, including such factors as his family situation, educational development, socialization, marital history, employment history, use of leisure time and prior military experience, if any;
>
> (d) Physical and emotional health and/or problems which may have played a role in the individual's socialization process, and efforts made to overcome any such problems;
>
> (e) Institutional experience, including information as to the offender's overall general adjustment, his ability to handle interpersonal relationships, his behavior responses, his planning for himself, setting meaningful goals in areas of academic schooling, vocational education or training, involvements in self-improvement activity and therapy and his utilization of available resources to overcome recognized problems. Achievements in accomplishing goals and efforts put forth

3

in any involvements in established programs to overcome problems are carefully evaluated;

(f) Community resources available to assist the offender with regard to his needs and problems, which will supplement treatment and training programs begun in the institution, and be available to assist the offender to further serve in his efforts to reintegrate himself back into the community and within his family unit as a productive useful individual.

*Id.* (citing 9 D.C.R.R. ch.2, § 105.1 (1972)).

## 2. The 1987 Regulations

In 1985, the Board formally adopted new regulations, which were codified in 1987 ("1987 Regulations"). *Sellmon v. Reilly*, 551 F. Supp. 2d 66, 69 (D.D.C. 2008) (citing D.C. MUN. REGS. tit. 28, § 100 (1987)). In order to structure the Board's discretion and promote consistency in its parole release decisions, the 1987 Regulations outlined four explicit factors that the Board would consider in each inmate's case. *Sellmon*, 551 F. Supp. 2d at 70. The Board would award or take away points for each factor, in order to arrive at a "total point score" indicating whether the prisoner was suitable for parole. *Id.*

The first two factors in this formula used information known at the time of incarceration, and the other two were based on post-incarceration information. D.C. MUN. REGS. tit. 28, § 100 (1987). The factors that the Board would consider were the inmate's "degree of risk" to offend again, the "type of risk" that he posed, his "institutional adjustment" and his "program participation." *Id.*

The first factor, the prisoner's "degree of risk," was based on a Salient Factor Score ("SFS"), an actuarial device assessing an inmate's "degree of risk" known at the time of his incarceration. *Id*. In calculating a prisoner's SFS, the Board would consider six factors: (1) prior convictions and adjudications; (2) prior commitments of more than thirty days; (3) age at

4

the commission of current offense; (4) recent commitment-free period; (5) status of prisoner at the time of the current offense; and (6) history of heroin or opiate dependence. *See* D.C. MUN. REGS. tit. 28, §§ 204.4-204.17 (1987). In turn, the prisoner's SFS placed him in one of four risk categories: low; fair; moderate; or high risk. *Id*. § 204.17. Each category also corresponded to a numerical score, allowing the Board to apply a baseline score to each prisoner. *Sellmon*, 551 F. Supp. at 70 (citing D.C. MUN. REGS. tit. 28, § 100 (1987)).

The Board would then alter this baseline score by taking into account the other three factors required to determine the prisoner's "total point score." *Id.* The second factor, the "type of risk," required examining whether the prisoner's current or past offenses involved violence, weapons or drug trafficking. *Id*. (citing D.C. MUN. REGS. tit. 28, § 204.18 (1987)). If any of these risk factors was present, the Board would add a point to the prisoner's baseline score. *Id*.

Regarding the third factor of "institutional adjustment," if the inmate's disciplinary infractions were serious or repetitive, the Board would add a point for "negative institutional behavior" to the baseline score. *Id.* at 70-71. For the fourth factor of "program achievement," the Board would subtract a point from the baseline score if the prisoner's program or work accomplishments were sufficiently substantial. *Id*. Upon calculating the total point score, the Board would then determine whether parole should be granted or denied. *Id*.

### 3. Abolition of the D.C. Parole Board and the 2000 Guidelines

In August 1997, Congress enacted the National Capital Revitalization and Self-Governance Improvement Act, which transferred management of the District of Columbia prison system to federal authority. *See generally* D.C. CODE §§ 24-101. The Act abolished the D.C. Parole Board and directed the USPC to conduct parole hearings for D.C. inmates. *Sellmon*, 551

5

After assuming jurisdiction over D.C. Code offenders, the USPC promulgated a series of amendments to the 1987 Regulations. *Id*. In 2000, the USPC issued revised guidelines to "promote both increased fairness and administrative efficiency." *See generally* 63 Fed. Reg. 39172 (July 21, 1998). Like the 1987 Regulations, the 2000 Guidelines use a scoring system to determine whether a prisoner is presumptively suitable for parole. 28 C.F.R. § 2.80(c). In calculating the SFS, the USPC determines a prisoner's "degree of risk." *Id.* As with the 1987 Regulations, this degree of risk places an inmate in one of four risk categories with its own numerical score. *Id.* § 2.80(f).

Furthermore, like the 1987 Regulations, the 2000 Guidelines determine the "type of risk" that inmates pose by evaluating static, pre-incarceration factors. *Id.* § 2.80(f)-(g). After calculating both the prisoner's degree and type of risk, the resulting "base point score" is converted into a "base guideline range," or a number of months that are added to the prisoner's court-imposed minimum sentence. *Id.* § 2.80(h). Once the USPC adds the base guideline range to the prisoner's minimum sentence, it also adds or subtracts months to account for negative institutional behavior and/or "superior" program achievement. *Id.* § 2.80(j)-(k). In addition, the USPC retains sole discretion to categorize inmate behavior as either "superior" or "non-superior," and only the former may result in a sentence reduction. *Id.* § 2.80(e). The resulting total number of months is known as the "total guideline range," which "indicates the customary range of time to be served, except in unusual circumstances [where the USPC may depart from the total guideline range], before release." *Id.*

6

## B. Factual and Procedural Background[1]

The plaintiffs are six federal inmates[2] who were incarcerated for D.C. Code violations that were committed before March 3, 1985. Compl. ¶¶ 10-17. Each of the plaintiffs had his initial parole hearing on or after August 5, 1998. *See id*. ¶¶ 10. At the time that the plaintiffs were incarcerated, their parole hearings were governed by the 1972 Regulations. *Id.* ¶ 3. Each of the plaintiffs' parole hearings has proceeded, however, under the 2000 Guidelines. *Id*. ¶ 4.

In May 2010, the plaintiffs brought suit against the Chairman and two of the Commissioners of the USPC. *See generally id*. The plaintiffs allege that by retroactively applying the 2000 Guidelines that were issued after their incarceration, as opposed to the 1972 Regulations in effect when they were imprisoned, the defendants effectively increased each plaintiff's period of incarceration. *Id*. ¶¶ 6, 315. The plaintiffs conclude that the defendants' retroactive application of parole guidelines violated the *Ex Post Facto* Clause and the Due Process Clause of the Constitution. *Id.* In September 2010, the defendants moved to dismiss the plaintiffs' complaint for failure to state a claim upon which relief can be granted. *See* Defs.' Mot. With the motion to dismiss ripe for consideration, the court now turns to the parties' arguments and to the applicable legal standards.

---

[1] For the purposes of ruling on this motion, the court assumes that the plaintiffs' allegations are true. *See Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2000) (observing that "[w]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint" (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))).

[2] The plaintiffs bring this action on their own behalf and "on behalf of a class of persons comprised of prisoners convicted under the D.C. Code who, despite having committed the offenses for which they are currently incarcerated before March 3, 1985, have had (or will have) the 2000 Guidelines improperly applied at their parole hearings by the Defendants, instead of the 1972 Regulations, which were in place at the time of their offenses." Compl. ¶ 300. Indeed, the plaintiffs have filed a motion to certify a class. *See* Pl.'s Mot. to Certify Class. That motion, however, is currently pending on the court's docket.

## III. ANALYSIS

### A. Legal Standard for a Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Yet in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (abrogating the oft-quoted language from *Conley*, 355 U.S. at 45-46, instructing courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim [] would entitle him to relief"). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing

8

*Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

### B. The Plaintiffs' Allegations Do Not Plausibly Suggest that the Defendants Violated the *Ex Post Facto* Clause

#### 1. Legal Standard for an *Ex Post Facto* Violation

The *Ex Post Facto* Clause of the United States Constitution prohibits retroactive increases in criminal punishment. *See* U.S. CONST. art. I, § 9, cl. 3; *Collins v. Youngblood*, 497 U.S. 37, 42-43 (1990). A retroactively applied parole regulation, guideline or policy statement may violate the *Ex Post Facto* Clause if it creates "a significant risk" of "a longer period of incarceration than under the earlier rule." *Garner v. Jones*, 529 U.S. 244, 255 (2000). Thus, "determin[ing] whether . . . retroactive application of a new parole regime violates the *Ex Post Facto* Clause requires a 'searching comparison' of the two parole regimes." *Sellmon*, 551 F. Supp. 2d 66, 84 (D.D.C. 2008) (citing *Fletcher v. Reilly*, 433 F.3d 867, 879 (D.C. Cir. 2006)

9

("*Fletcher III*")). "Sometimes . . . a risk [of a longer period of incarceration] will be apparent from facial differences between the old and new rule. But 'when the rule does not by its own terms show a significant risk, the prisoner must demonstrate'" that the "practical" effect of the new rule will be "a longer period of incarceration than under the earlier rule." *Phillips v. Fulwood*, 616 F.3d 577, 580-81 (D.C. Cir. 2010) (quoting *Garner*, 529 U.S. at 255 (alterations omitted)).

This Circuit has further clarified that the "controlling inquiry" is "one of practical effect." *Fletcher III*, 433 F.3d at 877. Thus, the court "must assess the magnitude of the risk in terms of the practical effect of the change in regulations on the length of a [prisoner's] incarceration." *Id.* In other words, "plaintiffs may not prevail simply by showing facial differences between the old and new policies. Rather[,] plaintiffs must demonstrate that the practical effect of the new policies was to substantially increase the risk that they would [each] serve lengthier terms of incarceration." *Sellmon*, 551 F. Supp. 2d at 91.

## 2. The Plaintiffs' Allegations Do Not Plausibly Suggest That the 2000 Guidelines Significantly Risk a Lengthier Incarceration Period Than the 1972 Regulations

The plaintiffs claim that retroactively applying the 2000 Guidelines created a significant risk of prolonged incarceration, as compared to potentially applying the 1972 or 1987 Regulations. Compl. ¶¶ 4-8. Their *ex post facto* claim involves two concerns. First, as a threshold matter, the plaintiffs allege that the 1972 Regulations are functionally equivalent to the 1987 Regulations, such that the 1987 Guidelines, rather than the 1972 Regulations, should be compared with the 2000 Guidelines. *Id.* ¶¶ 37, 76; Pls.' Opp'n at 13-17. Second, the plaintiffs assert that even if the 1972 Regulations apply, the substantive differences between the 1972 Regulations and the 2000 Guidelines are so great that retroactive application of the latter violated

10

the *Ex Post Facto* Clause. Compl. ¶¶ 37. More specifically, the plaintiffs claim that the facial differences between these two regulatory regimes significantly risk prolonged incarceration when applying the 2000 Guidelines. *Id.* ¶ 40. Alternatively, the plaintiffs assert that applying the 2000 Guidelines instead of the 1972 Regulations had the practical effect of significantly risking a lengthier incarceration period. *Id.* The court addresses these allegations in turn.

a. **Because the 1972 and 1987 Regulations Cannot Be Considered Interchangeable, the Court Applies the 1972 Regulations to Evaluate the Plaintiffs'** ***Ex Post Facto*** **Claims**

The plaintiffs allege that the 1987 Regulations and the 1972 Regulations are "substantively the same." *Id.* ¶ 76. The plaintiffs thus argue that they should be allowed to rely on the 1987 Regulations for purposes of arguing their *ex post facto* violation, even though the 1972 Regulations were in effect when they were respectively sentenced. *Id.*; Pls.' Opp'n at 13-17. By contrast, the defendants' motion to dismiss asserts that the 1987 Regulations "radically changed *how* the [parole] suitability determination was made[,] by creating and applying for the first time a scoring system to a set of factors." Defs.' Mot. at 11. The defendants therefore contend that the 1987 Regulations cannot serve as a proxy for the 1972 Regulations. *Id.*

Generally, plaintiffs "may only pursue an *ex post facto* claim based on the parole regime that was in place at the time they committed their offenses." *Sellmon*, 551 F. Supp. 2d at 85. At the time that the plaintiffs were incarcerated, the 1972 Regulations were in place. Compl. ¶ 10. The plaintiffs insist, however, that the 1987 Regulations should apply, rather than the 1972 Regulations, because the "two regimes are substantially the same." Pls.' Opp'n at 14.

In *Sellmon*, the court squarely rejected the argument that the 1972 and 1987 Regulations are interchangeable. *Sellmon*, 551 F. Supp. 2d at 85. Describing the 1972 Regulations, the *Sellmon* court concluded that the Board at that time had "almost unbridled discretion" to grant

11

parole. *Id.* Although the 1972 Regulations provided a list of factors for the Board to consider when making this determination, they offered no guidance as to how such factors should be weighed in the ultimate decision. *Id.* By contrast, the 1987 Guidelines put forward an entirely different procedure by which to make parole determinations. *Id.* at 69-71. The *Sellmon* court thus concluded that "there is simply no evidence before the [c]ourt that the Board's practices pre- and post-1987 were similar enough to allow plaintiffs convicted prior to 1987 to rely upon the 1987 Regulations for purposes of arguing an *ex post facto* violation." *Id.* at 86.

This court reaches the same conclusion here. The plaintiffs' allegations regarding the similarities among the pre- and post-1987 Board's practices are too speculative to allow plaintiffs convicted before 1987 to rely on the 1987 Regulations when arguing an *ex post facto* violation.[3] *Sellmon v. Reilly*, 561 F. Supp. 2d 46, 49 (D.D.C. 2008). *Sellmon v. Reilly*, 561 F. Supp. 2d 46, 49 (D.D.C. 2008). The Board's "almost unbridled discretion to grant parole" under the 1972 Regulations stands in stark contrast to the 1987 Regulations, which employed a scoring system to structure the Board's discretion. *Compare* D.C. MUN. REGS. tit. 28, § 100 (1987), *with* 9 D.C.R.R. ch.2, § 105.1 (1972). As the *Sellmon* court noted, "the pre-1987 Regulations are thus of minimal help in demonstrating how the Board exercised its discretion in practice prior to

---

[3]     The plaintiffs argue that under D.C. Court of Appeals precedent, the 1987 Regulations may serve as a proxy for the 1972 Regulations. Compl ¶ 10. Specifically, the plaintiffs note that in *Davis v. Henderson*, the D.C. Court of Appeals stated that the 1987 Regulations "merely formalize[d] the manner in which the Board exercise[d] the discretion conferred upon it" by the 1972 Regulations. 652 A.2d 634, 636 (D.C. 1995). *Davis*, however, is not binding on this court with respect to the question of whether the retroactive application of the 1987 Regulations violated the *Ex Post Facto* Clause. *Blair-Bey v. Quick*, 151 F.3d 1036, 1049-50 (D.C. Cir. 1998) ("But we are not bound to follow the D.C. Court of Appeals' analysis of federal law, and so need not defer to Davis's reading of what the ex post facto clause requires on the facts of a particular case."); *see also Sellmon*, 551 F. Supp. 2d at 85-86 (holding that *Davis* did not require the federal district court to treat the 1972 and 1987 Regulations as interchangeable when analyzing an *ex post facto* claim).

1987." *Sellmon*, 551 F. Supp. 2d at 86 n.15; *see also Wilson*, 772 F. Supp. 2d at 266-67 (declining to apply the 1987 Regulations instead of the 1972 Regulations because "a plaintiff may invoke an *ex post facto* protection only on the basis of the parole regime that was in effect at the time he committed his offense").

Accordingly, the court declines to treat the 1972 and 1987 Regulations as interchangeable. Consequently, the court turns to analyze the facial and practical differences between the 1972 Regulations and 2000 Guidelines that the plaintiffs allege give rise to an *ex post facto* claim.

**b. The Alleged Facial Differences Between the 1972 Regulations and 2000 Guidelines Do Not Plausibly Suggest that the 2000 Guidelines Significantly Risk Prolonged Incarceration**

The plaintiffs contend that the facial differences between the 1972 Regulations and the 2000 Guidelines demonstrate that retroactively applying the 2000 Guidelines significantly risked increasing the plaintiffs' incarceration period. Pls.' Opp'n at 18-19. According to the plaintiffs, there are "no fewer than four broad categories of facial differences between the 1972 Regulations and the 2000 Guidelines: offense accountability, reversal of the parole suitability presumption, institutional experience, and discretion and disciplinary infractions." *Id.* at 19.

The defendants argue that because the 1972 Regulations do not provide "any standards that the Board had to follow in deciding whether, if at all, to parole an inmate," such regulations do not provide a "sufficiently predictable basis for comparison with the 2000 Guidelines." Defs.' Reply at 5. The defendants further contend that a "comparison of the 1972 Regulations with the 2000 Guidelines, [even] where practicable, fails to demonstrate that application of the 2000 Guidelines subject[ed] inmates to a 'significant risk' of prolonged incarceration." *Id.* at 3.

13

In order to succeed on an *ex post facto* claim, a prisoner may use the facial differences between an "old and new rule" to demonstrate that applying the newer rule creates a significant risk of a prolonged incarceration period. *Phillips v. Fulwood*, 616 F.3d at 580-81. Here, the plaintiffs attempt to demonstrate that facially comparing the 1972 Regulations and 2000 Guidelines reveals that the later regime would subject the plaintiffs to prolonged incarceration. *See generally* Pls.' Opp'n. As indicated below, however, the plaintiffs' efforts ultimately fail due to the amorphous nature of the 1972 Regulations.

First, the plaintiffs assert that "the facial differences between the 1972 Regulations and the 2000 Guidelines with respect to offense accountability clearly state a claim upon which relief can, and should, be granted." Pls.' Opp'n at 19. More specifically, the plaintiffs claim that under the 1972 Regulations, a prisoner who served his minimum sentence was "assumed" to have "fully satisfied [his] accountability for the offense for which he . . . was convicted." Compl. ¶¶ 32; *see also* Pls.' Opp'n at 18.[4] The plaintiffs contend that unlike the 1972 Regulations, the 2000 Guidelines presume that completing one's minimum sentence satisfies his offense accountability, and that such presumption can be rebutted by the "gravity of the [prisoner's] offense." Pls.' Opp'n at 18. The plaintiffs insist that the 2000 Guidelines allow the defendants "to deny Plaintiffs' parole requests based solely on the alleged seriousness of their offenses." *Id.* In response, the defendants assert that "offense accountability" was not the sole barrier to receiving parole under the 1972 Regulations, but rather, that it was one of many factors that the Board would consider in its parole determinations. Defs.' Reply at 1-2.

---

[4]    The court infers from the parties' submissions that the term "offense accountability" refers to the amount of time that the USPC requires a person be incarcerated in order to fully hold him accountable for his crime.

The plaintiffs' arguments fail to take into account that while the 1972 Regulations required a prisoner to serve either "the minimum sentence imposed" or "the prescribed portion of his sentence" before being eligible for parole, the 1972 Regulations also required the Board to consider the "reasonable probability that [the] prisoner [would] live and remain at liberty without violating the law, [and] that his release [was] not incompatible with the welfare of society." D.C. Code § 24-204 (1973) (emphasis added). Thus, contrary to the plaintiffs' assertions, the 1972 Regulations did not include an "assumption" that prisoners had fulfilled their offense accountability merely by serving their minimum sentence.

Instead, the 1972 Regulations required the Board to make a discretionary determination regarding parole by considering the prisoner's likelihood of reoffending and the welfare of society. As outlined under the 1972 Regulations, when making such a determination, the Board could have considered the "nature of the [prisoner's] violation," including any "mitigating or aggravating circumstances." *See* 9 D.C.R.R. § 105.1 (1982). Thus, instead of serving as a singular barrier to receiving parole, offense accountability was one of many factors that the Board could consider during a parole determination. *Id.* Furthermore, the weight that the Board could place on the nature of a prisoner's offense was completely discretionary. *See* 9 D.C.R.R. § 105.1 (1982). Thus, due to the "breadth" of discretion within the 1972 Regulations, this court cannot conclude that by merely taking a concrete approach to account for the violent nature of an inmate's crime, the 2000 Guidelines imposed a significant risk of prolonged incarceration. *Wilson*, 772 F. Supp. 2d at 267 (stating that "the pre–1987 Regulations gave the Board, and now the Commission, so much discretion that the [c]ourt simply cannot compare . . . how the

15

Commission might have evaluated parole under those regulations with how the Commission did evaluate parole under the modern 2000 Guidelines").

Along the same lines, the plaintiffs assert that facial differences between the 1972 Regulations' and the 2000 Guidelines' respective treatment of violent offenders creates a significant risk of prolonged incarceration by the latter. Compl. ¶ 78. More specifically, the plaintiffs note that "under the 2000 Guidelines, an offender who has committed a crime of violence resulting in the death of a victim can *never* be found suitable for parole at the[ir initial eligibility] for parole after having served their minimum sentence." *Id.* (quoting *Sellmon*, 551 F. Supp. 2d at 99-100). Thus, the plaintiffs contend that "the 2000 Guidelines unilaterally increase the period of incarceration that [the plaintiffs, all of whom are violent offenders,] must serve to be presumed suitable for parole." Pls.' Opp'n at 19. By contrast, the defendants contend that nothing in the 1972 Regulations imposes limits on the Board's consideration of an inmate's violent crime, including nothing that prevents it from finding a violent crime offender suitable for parole after completing his minimum sentence. *See* Defs.' Reply at 10.

The plaintiffs again misunderstand the nature of the respective regulatory regimes. The plaintiffs portray the 2000 Guidelines as reducing a violent offender's likelihood for parole, when compared to the 1972 Regulations. *Id.* As noted earlier, however, under the 1972 Regulations, the Board has the discretion to consider the violent nature of an inmate's crime when rendering a parole decision. *See* 9 D.C.R.R. § 105.1 (1982); D.C. CODE § 24-204 (1973) (authorizing parole only if there was a "reasonable probability that a prisoner [would] live and remain at liberty without violating the law, [and] that his release [was] not incompatible with the welfare of society"). Thus, the 1972 Regulations do not presume that a violent offender is

16

suitable for parole upon completing his minimum sentence, and instead, allow the Board to make a discretionary determination to that effect. As such, under the 1972 Regulations, the Board may exercise its discretion to grant parole to a violent offender who has served his minimum sentence. The 1972 Regulations are therefore too discretionary to allow this court to make a valid comparison between the results of these regulatory regimes and to draw the conclusion that the 2000 Guidelines created a significant risk of prolonged incarceration. *Cf. Sellmon*, 551 F. Supp. 2d 66, 99-100 (determining that the 2000 Guidelines created a significant risk of increased incarceration time when compared to the 1987 Regulations because the 2000 Guidelines changed the numeric risk value that attached to a violent offender).

The plaintiffs also argue that the facial differences between the 2000 Guidelines' and the 1972 Regulations' respective treatment of an inmate's institutional experience significantly risk prolonged incarceration. *Id.* at 20-21. According to the plaintiffs, the 2000 Guidelines "make it impossible . . . to reduce the time [that prisoners] must serve to satisfy offense accountability through good institutional behavior and programming and work achievement." *Id.* at 21. Along the same lines, the plaintiffs contend that "the 2000 Guidelines increase an inmate's sentence for stale and insignificant disciplinary infractions." *Id.* at 22.

The defendants counter that the 1972 Regulations do not require the Board to give "heightened importance" to a prisoner's good behavior and achievement. Defs.' Reply at 6. The defendants argue that there is thus no indication that the 1972 Regulations award an inmate more credit for such factors than do the 2000 Guidelines. *Id.* Furthermore, the defendants note that there is nothing in the Guidelines that imposes requirements on the Board's consideration of an inmate's disciplinary history. *Id.* at 10.

17

Again, it is difficult to identify how the 1972 Regulations compare with the 2000 Guidelines with respect to evaluating an inmate's "institutional experience," because the 1972 Regulations give the Board wide discretion to consider these types of factors. D.C. CODE § 24-204 (1973) (listing institutional experience as one of several factors that the Board could consider in making parole determinations). The 1972 Regulations do not control the weight that the Board may lend to disciplinary infractions or good institutional behavior. *See* 9 D.C.R.R. § 105.1 (1982). Because the 1972 Regulations merely advise that the Board may consider institutional behavior in determining parole suitability, the plaintiffs are unable to state a plausible claim that there is a significant risk of prolonged incarceration under the 2000 Guidelines.

In sum, the parole determinations under the 1972 Regulations were made in an unbridled, discretionary fashion, quite unlike the methodical and controlled decision-making that would occur under the 2000 Guidelines. Thus, the plaintiffs face great difficulty in pleading sufficient facts from which this court can reasonably infer that facial distinctions between the 1972 Regulations and the 2000 Guidelines significantly risk prolonging the plaintiffs' respective incarceration. Compl. ¶ 11. Yet this is precisely what the plaintiffs must allege in order to sufficiently plead an *ex post facto* claim based on the relevant facial differences. *See California Dep't of Corrections v. Morales*, 514 U.S. 499, 506 n.3 (1995) (stating that "the focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' . . . but on whether any such change . . . increases the penalty by which a crime is punishable"); *see also Phillips v. Fulwood*, 616 F.3d at 581 ("In general, *ex post facto* claims require a comparison of the challenged scheme to the one in place when the prisoner committed

18

his crimes.").  Accordingly, the court determines that the plaintiffs have failed to sufficiently allege a plausible claim for an *ex post facto* violation based on the relevant facial differences.[5] *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 556, 562; *Fletcher*, 433 F.3d at 877.

### c. The Alleged Practical Differences Between the 1972 Regulations and 2000 Guidelines Do Not Plausibly Suggest that the 2000 Guidelines Significantly Risk Prolonged Incarceration

The defendants assert that the complaint should be dismissed because the plaintiffs cannot demonstrate that applying the 2000 Guidelines, as opposed to the 1972 Regulations, would on a practical level significantly risk a comparatively longer incarceration.  Defs.' Mot. at 1.  Specifically, as alluded to earlier, the defendants contend that the 1972 Regulations fail to provide a sufficient basis for comparison between their application and that of the 2000 Guidelines.  *Id.* at 11.  Again, because the Board has such broad discretion under the 1972 Regulations, the defendants assert, the Regulations may yield varying results in parole determinations among inmates in materially comparable situations.  *Id.* at 11-12.  The defendants argue that because it is difficult to predict the likely result when applying the 1972 Regulations to specific prisoners, no meaningful comparison can be made between the respective outcomes of applying the 1972 Regulations and the 2000 Guidelines.  *Id.*  The defendants thus contend that it is it is nearly impossible to determine what practical effects would result in applying one regulatory regime over the other.  *Id.* at 12-13.

By contrast, the plaintiffs argue that the application of the 2000 Guidelines would result in comparatively longer periods of incarceration because, as noted earlier, they:  (1) allow the

---

[5]      The defendants also assert that the regulations at issue in this case are not "laws" within the meaning of the *Ex Post Facto* Clause.  The defendants correctly note that "[t]his argument was rejected by the D.C. Circuit in *Fletcher v. District of Columbia*, 391 F.3d 250 (D.C. Cir. 2004), but the Commission believes the rehearing panel erred."  Defs.' Mot. at 18.  The defendants' assertion that the regulations do not constitute "laws" is therefore without merit.

Commission to deny parole requests based solely on the seriousness of the plaintiffs' offenses and accountability grounds, whereas the 1972 Regulations do not contain such a restriction, Pls.' Opp'n at 25; (2) emphasize criminal history rather than rehabilitation, physical and emotional health, and institutional experience and achievements, factors that were considered under the 1972 Regulations, *id.* at 26; (3) allow the evaluation of disciplinary reports that have the practical effect of lengthening incarceration, as opposed to the 1972 Regulations, Pls.' Opp'n at 27; (4) reduce the weight accorded to non-superior program achievement, *id*. at 28; and (5) are applied in a manner such that the defendants do not use their discretion to depart below the calculated guidelines, *id*. at 29.

### i. Seriousness of the Plaintiffs' Respective Offenses

The plaintiffs specifically argue that applying the 2000 Guidelines, as opposed to the 1972 Regulations, significantly risks a comparatively prolonged period of incarceration because the Commission may deny parole solely on the alleged seriousness of the plaintiffs' respective offenses. Pls.' Opp'n at 24-26. The plaintiffs fail to note, however, that the 1972 Regulations, like the 2000 Guidelines, also consider the nature of a prisoner's offense when determining whether parole is appropriate for a prisoner. D.C. CODE § 24-204 (1973) (stating that the Board could consider "[t]he offense, noting the nature of the violation"); *see also Glascoe v. Bezy*, 421 F.3d 543, 548 (7th Cir. 2005) (asserting that the commission of extremely violent crimes was clearly relevant to parole decisions made by the Board prior to 1986).

Here, all of the plaintiffs were convicted of violent crimes that resulted in the victim's death, facts that the Board would have likely considered when determining parole eligibility under the 1972 Regulations. *See* 9 D.C.R.R. § 105.1(a) (1982). The plaintiffs therefore fail to

allege any facts that would suggest that the 2000 Guidelines, as compared to the 1972 Regulations, give more consideration to the seriousness of a prisoner's offense and would therefore result in a longer period of incarceration. *See generally* Compl.; Pls.' Opp'n.

### ii. Criminal History Versus Rehabilitation and Other Factors

Additionally, the plaintiffs argue that the 2000 Guidelines provide for a "scoring system [that] emphasizes criminal history rather than rehabilitation, physical and emotional health, and institutional experience and achievements," while making no mention of an offender's mental, physical and social problems that are considered under the 1972 Regulations. Pls.' Opp'n at 26. In reality, however, the 2000 Guidelines consider a host of factors in addition to a prisoner's criminal history when determining parole suitability. *See* 28 C.F.R. § 2.80(n)(3)(i)(C) (stating that the Commission may consider "the availability of [a prisoner's] community resources"); *Id.* § 2.80(k) (allowing for a reduction in a prisoner's sentence based on the number of months during which the prisoner demonstrated superior program achievement); *Id.* § 2.80(n)(3)(ii)(C) (instructing that the Commission may allow for a decision below the calculated guideline range when a prisoner demonstrates "[c]learly exceptional program achievement"). Furthermore, these factors are non-exhaustive, allowing the Commission to determine, at its discretion, additional types of positive behavior for which it can give the prisoner credit. *Id.* § 2.80(n)(3) ("Factors that may warrant a decision below the guidelines include, but are not limited to, the following . . ."). Thus, because these factors are non-exhaustive, and given the breadth of the Board's discretion, the 2000 Guidelines' emphasis on criminal history does not support an *ex post facto* claim.

21

### iii. Disciplinary Reports

Like the 2000 Guidelines, the 1972 Regulations allowed the Board to use disciplinary reports when determining parole eligibility. 9 D.C.R.R. § 105.1(e) (1982). Specifically, under the 1972 Regulations, the Board could have taken into account a prisoner's "[i]nstitutional experience, including information as to the offender's overall general adjustment." *Id.*; *see also* 9 D.C.R.R. § 105.2 (1982) ("In general, the Board [would] not grant parole unless the prisoner [had] substantially observed the rules of the institution in which he [was] confined."). Thus, the plaintiffs' argument that the Commission using disciplinary reports via the 2000 Guidelines will have the practical effect of prolonged incarceration is not persuasive, as the Board could have also considered such reports pursuant to the 1972 Regulations. 9 D.C.R.R. § 105.1(e) (1982).

### iv. Non-Superior Program Achievements

The plaintiffs further assert that the Commission's use of the 2000 Guidelines reduces the discretionary weight that the Board afforded to non-superior program achievements under the 1972 Regulations. Pls.' Opp'n at 28. The 1972 Regulations allow the Board to consider a prisoner's initiative in "setting meaningful goals in areas of academic schooling, vocational education or training, involvements in self-improvement activity and therapy and his utilization of available resources to overcome recognized problems." 9 D.C.R.R. § 105.1(e) (1982).

The 1972 Regulations do not, however, indicate the respective weight that the Board would give to each of these achievements. *Id.*; *see also Reilly*, 551 F. Supp. 2d at 86 n.15 (stating that the 1972 Regulations "offered no guidance as to how [the six non-exclusive] factors should be weighted in [a] decision"). Nor do the 1972 Regulations compel the Board to consider a prisoner's program achievement. 9 D.C.R.R. § 105.1 (1982). It is therefore possible that when

the Board made parole determinations, it did not consider a prisoner's program achievements at all. This would suggest that the plaintiffs' assertion that the 1972 Regulations gave a prisoner's program achievements "heightened importance" is both speculative and unfounded. Pls.' Opp'n at 21; *see Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 509 (1995) ("The [new rule] creates only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes, and such conjectural effects are insufficient under any threshold we might establish under the *Ex Post Facto* Clause."). In sum, without knowing precisely what weight, if any, an inmate's program achievements would have received under the 1972 Regulations, it is not possible to determine whether the 2000 Guidelines' focus on superior program achievements would significantly risk prolonged incarceration.

### v. The Defendants' Alleged Disinclination to Depart Below the 2000 Guidelines

The plaintiffs assert that "when applying the 2000 Guidelines, the [d]efendants do not use their discretion to depart downward" from the calculated guidelines, whereas under the 1972 Regulations, the Board would take mitigating factors into account. Pls.' Opp'n at 29. Yet under the 2000 Guidelines, the Commission may for "unusual circumstances" either "grant or deny parole to a prisoner notwithstanding the guidelines." 28 C.F.R. § 280(n)(1). The court, moreover, must "presume [that] the [Commission] follows its statutory commands and internal policies in fulfilling its obligations." *Garner*, 529 U.S. at 256. Thus, because the 2000 Guidelines allow decisions resulting in parole terminations that fall below or above the calculated guidelines, the court presumes that the Commission will use its discretion to depart from the guidelines where appropriate. *Id*. In fact, the Commission has already used its discretionary power, pursuant to the 2000 Guidelines, to make parole determinations above the

23

calculated guidelines. *Reilly*, 551 F. Supp. 2d 66 (stating that the Commission departed from the 2000 Guidelines based on the prisoner's propensity to carry weapons and his callous indifference toward the victims).

Thus, the court agrees with the defendants that due to the extremely broad discretion that the Board possessed under the 1972 Regulations, there remains no reasonably reliable method of comparing a particular defendant's incarceration period under the 1972 Regulations, as opposed to under the 2000 Guidelines. *Wilson*, 772 F. Supp. 2d at 266-67. It appears therefore that any comparison of the plaintiffs' incarceration period under the two regulatory regimes would be speculative.[6] *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 509 (1995) (noting that an *Ex Post Facto* claim cannot be based on the speculative possibility that the new rule will increase an individual's punishment). Accordingly, the court cannot reasonably infer from the plaintiffs' alleged facts that there is a significant risk of prolonged incarceration under the 2000 Guidelines, and dismisses the plaintiffs' *ex post facto* claims for failure to state a claim upon which relief can be granted. *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 562.

### C. The Court Dismisses the Plaintiffs' Due Process Claims

The plaintiffs also allege that the Commission's retroactive application of the 2000 Guidelines violated the Due Process Clause of the Fifth Amendment. Pls.' Opp'n at 30-32. In response, the defendants assert that the plaintiffs' due process claims cannot succeed because there is no constitutionally recognized liberty interest in parole. Defs.' Mot. at 19-20. The

---

[6]     The court accepts all of the plaintiffs' factual allegations as true. *See Atherton*, 567 F.3d at 681. For the reasons noted above, however, the court determines that even the plaintiffs' well-pleaded factual allegations are insufficient to state a plausible *ex post facto* claim. The court remains open to reconsider whether the plaintiffs have a plausible claim if, in fact, the plaintiffs provide a non-speculative means of establishing what their incarceration periods would be under the 1972 Regulations, notwithstanding that those regulations are purely discretionary.

plaintiffs contend that the 2000 Guidelines denied them a liberty interest by refusing to reward inmates for any positive program or work achievements earned prior to their parole hearings. Compl. ¶ 321; Pls.' Opp'n at 30. The plaintiffs maintain that these achievements may be rewarded with favorable parole determinations, analogous to "good time credits" that result in a shortened prison sentence. [7] Pls.' Opp'n at 30.

The plaintiffs' arguments are unavailing. There is no direct constitutional liberty interest in parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 99 (1979). A liberty interest can only be created if it is articulated in mandatory statutory or regulatory language placing substantive limits on official discretion. *See Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 462-63 (1989). Nevertheless, this Circuit has concluded that the 1972 Regulations are so "discretionary and open-ended" that they cannot give rise to a due process claim. *Blair-Bey*, 151 F.3d at 1048; *Price v. Barry*, 53 F.3d 369, 371 (D.C. Cir. 1995) (per curiam). Indeed, the 1972 Regulations created no "expectancy of release," and thus the plaintiffs "cannot claim a liberty interest entitling [them] to due process protections," as the Regulations did not impose substantive limitations on the Board's discretion. *Price v. Barry*, 53 F.3d at 371. Accordingly, because no constitutionally recognized liberty interest can arise from parole determinations

---

[7]     The plaintiffs rely on *Wolff v. McDonnell*, 418 U.S. 539 (1974), to argue that they have a liberty interest rooted in their good institutional behavior. Pl.'s Opp'n at 30. In *Wolff*, the Supreme Court determined that an inmate has a liberty interest in the "good time" credit that he receives for good behavior because those credits statutorily trigger a reduction in the length of incarceration. *See Wolff*, 418 U.S. at 545 n.6, 557. Neither the 1972 Regulations nor the 1987 Regulations, however, mandate sentence reductions for good institutional behavior. *See generally* 9 D.C.R.R. § 105.1 (1982); 28 C.F.R. § 2.80. Thus, the plaintiffs' reliance on *Wolff* is misplaced.

under the 1972 Regulations, the court dismisses the plaintiffs' due process claims.[8]

## IV. CONCLUSION

For the foregoing reasons, the court grants the defendants' motion to dismiss. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 30th day of September, 2011.

RICARDO M. URBINA
United States District Judge

---

[8]     The court's conclusion with respect to the due process claims would be the same under the 1987 Regulations. *See Ellis v. District of Columbia*, 84 F.3d 1413, 1420 (D.C. Cir. 1996); *see also Fisher v. Fulwood*, 2011 WL 1119644, at *4 (D.D.C. Mar. 27, 2011).

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| ROY A. DANIEL *et al*., | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 10-862 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 17 |
| | : | | |
| ISAAC FULWOOD, JR., Chairman of the | : | | |
| United States Parole Commission *et al*., | : | | |
| | : | | |
| Defendants. | : | | |

## ORDER

For the reasons stated in the court's Memorandum Opinion separately and

contemporaneously issued this 30th day of September 2011, it is hereby

**ORDERED** that the defendants' motion to dismiss **GRANTED**.

**SO ORDERED.**

RICARDO M. URBINA
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
                                    )
ROY A. DANIEL, et al.,              )
                                    )
          Plaintiffs,               )
                                    )
     v.                             )   Civil Action No. 10-862 (RWR)
                                    )
ISAAC FULWOOD, JR., et al.,         )
                                    )
          Defendants.               )
                                    )
```

## MEMORANDUM OPINION AND ORDER

The plaintiffs are federal inmates who alleged that the U.S. Parole Commission violated the Ex Post Facto Clause in making parole decisions by applying the 2000 parole guidelines rather than the 1972 parole regulations that were in place at the time each plaintiff was sentenced. The plaintiffs also alleged that they were denied fair parole review hearings, in violation of the Due Process Clause of the Fifth Amendment. A previous memorandum opinion granted the defendants' motion to dismiss both of the plaintiffs' claims. The plaintiffs now move for reconsideration under Federal Rule of Civil Procedure 59(e). Because the plaintiffs fail to show clear error or manifest injustice, their motion will be denied.

### BACKGROUND

Plaintiffs Roy A. Daniel, Alfonso Taylor, Harold Venable, Percy Jeter, Abdus-Shahid Ali, and William Terry are federal

inmates who were incarcerated for violations of the D.C. Code before March 3, 1985. At the time the plaintiffs were incarcerated, their parole hearings were governed by the 1972 Parole Regulations as applied by the D.C. Parole Board. (Compl. ¶ 3.) However, the plaintiffs' parole hearings have proceeded under the 2000 Guidelines as adopted by the United States Parole Commission ("USPC"), which assumed jurisdiction over D.C. Code offenders in 1997. (Id. at ¶ 4; see also Sellmon v. Reilly, 551 F. Supp. 2d 66, 68 (D.D.C. 2008).) The plaintiffs alleged that when the defendants - - the Chairman and two Commissioners of the USPC - - applied the revised parole guidelines, they violated the Ex Post Facto Clause and the Due Process Clause of the United States Constitution by effectively increasing each plaintiff's period of incarceration. (Compl. ¶¶ 6, 10-17.)

An opinion and order issued in September 2011 ("September opinion") dismissed the plaintiffs' complaint for failure to state a claim. The September opinion held that the complaint did not plausibly plead that the retroactive application of parole regulations to prisoners created a significant risk of longer incarceration in violation of the Ex Post Facto Clause, and that parole regulations do not create a constitutionally protected liberty interest that is protected by the Due Process Clause. See Daniel v. Fulwood, 823 F. Supp. 2d 13, 15 (D.D.C. 2011). The plaintiffs have moved under Federal Rule of Civil Procedure

59(e) for reconsideration of the September opinion.  The
defendants oppose.

DISCUSSION

"'While the court has considerable discretion in ruling on a
Rule 59(e) motion, the reconsideration and amendment of a
previous order is an unusual measure.'"  <u>Matthews v. District of
Columbia</u>, 774 F. Supp. 2d 131, 132 (D.D.C. 2011) (quoting <u>Berg v.
Obama</u>, 656 F. Supp. 2d 107, 108 (D.D.C. 2009) (internal quotation
omitted)).  "[A]s a rule [a] court should be loathe to [revisit
its own prior decisions] in the absence of extraordinary
circumstances such as where the initial decision was clearly
erroneous and would work a manifest injustice."  <u>Marshall v.
Honeywell Technology Solutions, Inc.</u>, 598 F. Supp. 2d 57, 59
(D.D.C. 2009)(quoting <u>Lederman v. United States</u>, 539 F. Supp. 2d
1, 2 (D.D.C. 2008) (internal quotation omitted)).  "'A motion to
alter the judgment need not be granted unless there is an
intervening change of controlling law, new evidence becomes
available, or there is a need to correct a clear error or prevent
manifest injustice."  <u>Matthews</u>, 774 F. Supp. 2d at 132 (quoting
<u>Berg</u>, 656 F. Supp. 2d at 108).  "Motions for reconsideration 'are
not simply an opportunity to reargue facts and theories upon
which a court has already ruled.'"  <u>Moses v. Dorado</u>, 840 F. Supp.
2d 281, 286 (D.D.C. 2012) (quoting <u>Black v. Tomlinson</u>, 235 F.R.D.
532, 533 (D.D.C. 2006)(internal quotations omitted))).

The plaintiffs had argued that the Ex Post Facto analysis should compare the 2000 guidelines against the 1987 regulations which plaintiffs asserted were substantially similar to the 1972 regulations.  The September opinion held that "[t]he plaintiffs' allegations regarding the similarities among the pre- and post-1987 Board's practices are too speculative to allow plaintiffs convicted before 1987 to rely on the 1987 Regulations when arguing an Ex Post Facto violation."  Daniel, 823 F. Supp. 2d at 20-21 (citing Sellmon v. Reilly, 561 F. Supp. 2d 46, 49 (D.D.C. 2008)).  The plaintiffs argue that the opinion erred because the D.C. Court of Appeals found that the 1987 Guidelines "'merely formalize the manner in which the Board exercises the discretion conferred upon it' by the 1972 Regulations." (Pls.' Mem. in Supp. of Mot. for Recons. ("Pls.' Mem.") at 2 (quoting Davis v. Henderson, 652 A.2d 634, 636 (D.C. 1991))).

This issue was argued by the parties before.  The September opinion considered the applicability of Davis and determined that it was not binding.  Daniel, 823 F. Supp. 2d at 20-21 n.3.  While the plaintiffs admit this in the motion for reconsideration, they claim to rely on the Davis ruling as an interpretation of D.C. Code, not as a binding precedent.  (Pls.' Mem. at 2.) However, the September opinion interpreted Sellmon as "holding that Davis did not require the federal district court to treat the 1972 and 1987 Regulations as interchangeable when analyzing

an Ex Post Facto claim." Daniel, 823 F. Supp. 2d at 20-21 n.3.
The Sellmon opinion states in relevant part:

> The Davis decision did not hold that the 1987
> Regulations actually represented or codified the actual
> practice of the Board prior to their enactment . . . .
> [T]he D.C. Circuit has already held that the Davis
> decision is not binding on federal courts with respect
> to the question of whether the retroactive application
> of the 1987 Regulations violated the Ex Post Facto
> Clause.

Sellmon, 551 F. Supp. 2d at 86. Plaintiffs have shown no clear
error or any manifest injustice warranting reconsideration on
this point.

The plaintiffs also argue that reconsideration should be
granted because the 2000 Guidelines impose substantive legal
burdens not present in the 1972 regulations. (Pls.' Mem. at 5.)
They allege that the September opinion erred when it concluded
that "because the Commission sometimes departs upward under the
2000 Guidelines, it must also depart down." (Id. at 7.) The
plaintiffs also assert that "[a]t a minimum it is impermissible
to draw [the inference] against the moving party in a 12(b)(6)
motion." (Pls.' Mem. at 7-8.) The plaintiffs mischaracterize
the September opinion's reasoning. The September opinion stated
that while it "accept[ed] all of the plaintiffs' factual
allegations as true[,] . . . even the plaintiffs' well-pleaded
factual allegations are insufficient to state a plausible ex post
facto claim." Daniel, 823 F. Supp. 2d at 27 n.6 (internal
citation omitted). The September opinion reached its conclusion

not based upon impermissible inferences drawn against the plaintiffs, but rather because "there remains no reasonably reliable method of comparing a particular defendant's incarceration period under the 1972 Regulations, as opposed to under the 2000 Guidelines" and that "any comparison of the plaintiffs' incarceration period under the two regulatory regimes would be speculative." Daniel, 823 F. Supp. 2d at 27 (citing Wilson v. Fullwood, 772 F. Supp. 2d 246, 266–67 (D.D.C. 2011) and Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 509 (1995)). The September opinion did not infer that the parole board departs down from the guidelines, but, more broadly, reasoned that "the Commission will use its discretion to depart from the guidelines where appropriate." Daniel, 823 F. Supp. 2d at 27. As the September opinion noted, a court must "presume [that] the [Commission] follows its statutory commands and internal policies in fulfilling its obligations." Id. (citing Garner v. Jones, 529 U.S. 244, 256 (2000).)

Finally, the plaintiffs contend that "to sustain a claim that the Commission violated the Ex Post Facto Clause, plaintiffs need only plead (and later prove) that the 2000 Guidelines create a 'significant risk' that retroactive application will result in a longer period of incarceration for the plaintiffs." (Pls.' Mem. at 8 (quoting Garner, 529 U.S. at 255.)) They note that the September opinion stated that "[t]he court remains open to

reconsider whether the plaintiffs have a plausible claim if, in fact, the plaintiffs provide a non-speculative means of establishing what their incarceration periods would be under the 1972 Regulations, notwithstanding that those regulations are purely discretionary." Daniel, 823 F. Supp. 2d at 27 n.6.

The controlling inquiry articulated in Garner is as follows:

When the rule does not by its own terms show a significant risk, the respondent must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule.

Garner, 529 U.S. at 255. The D.C. Circuit summarized that "[t]he question is one of practical effect." Fletcher v. District of Columbia, 391 F.3d 250, 251 (D.C. Cir. 2004). The plaintiffs' Ex Post Facto claim was originally dismissed for failure to raise facial differences between the 1972 Regulations and the 2000 Guidelines that allowed the court to reasonably infer that the latter subject the plaintiffs to a significant risk of increased incarceration time. The motion for reconsideration explains that the plaintiffs would demonstrate the practical effects of the 1972 Regulations by reviewing the records of parole decisions under the 1972 Regulations in order to establish that application of the 2000 Guidelines created a significant risk of longer incarceration. However, the September opinion emphasized the "amorphous nature of the 1972 Regulations," which suggests that even examination of Parole Board decisions in an attempt to

divine the practical implementation of the Regulations would be necessarily and inherently speculative. Daniel, 823 F. Supp. 2d at 22. Plaintiffs have not shown that

. to be wrong. As another court found in addressing a similar Ex Post Facto claim, the pre-1987 Regulations involved "so much discretion that the Court simply cannot compare . . . how the Commission might have evaluated parole under those regulations with how the Commission did evaluate parole under the modern 2000 Guidelines." Wilson, 772 F. Supp. 2d at 267.

Although a complaint may survive a motion to dismiss "even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely," it must nonetheless "raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiffs' claims in order to survive dismissal. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). Here, although the plaintiffs have indeed stated their intention to establish the practical effect of the 1972 Regulations by examining the record, they have made no plausible showing of non-speculative evidence sufficient to support an Ex Post Facto claim. Although, as the plaintiffs note, "every parole regime . . . contains an element of discretion" (Pls.' Rep. at 1), not all parole regimes are as discretionary as the 1972 Regulations are. In considering a motion for reconsideration, a court is not required to draw any

inference in favor of the plaintiffs; it merely examines its
previous decision for clear error or manifest injustice.  See
Matthews, 774 F. Supp. 2d at 132.  Further, as the Federal
Circuit has stated, a court "is not required to permit discovery
based merely on the hope on the part of a plaintiff that it might
find evidence to support its complaint."  Bubaker Amusement Co.,
Inc., v. United States, 304 F.3d 1349, 1361 (Fed. Cir. 2002));
see also Ashcroft v. Iqbal, 556 U.S. 662, 686 (2009)(complaints
that are deficient under Fed. R. Civ. P. 8 are not entitled to
discovery); United States v. Marshall, 526 F.2d 1349, 1355 (9th
Cir. 1975), cert. denied sub nom. Marshall v. United States, 426
U.S. 923 (1976) (finding that the district court did not abuse
discretion in denying extensive discovery where the "claimed
infringement of constitutional rights was quite tenuous").

The plaintiffs have not satisfied the September opinion's
invitation to establish a non-speculative means of demonstrating
what their incarceration periods would have been under the purely
speculative 1972 regulations.  Reconsideration of that opinion is
not warranted, and the plaintiffs' motion will be denied.

### CONCLUSION AND ORDER

The plaintiffs have not shown clear error or manifest
injustice in the September 2011 opinion granting the defendants'
motion to dismiss.  Accordingly, it is hereby

ORDERED that the plaintiffs' motion [29] for reconsideration be, and hereby is, DENIED.

SIGNED this 27th day of September, 2012.

/s/

RICHARD W. ROBERTS
United States District Judge