# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROY A. DANIEL, et al., | ) <br> ) |
| Plaintiffs, | ) <br> ) |
| v. | )    Case No. 10-cv-00862 (APM) <br> ) |
| J. PATRICIA WILSON SMOOT, et al., | ) <br> ) |
| Defendants. | ) <br> ) |

## MEMORANDUM OPINION

Plaintiffs in this matter are D.C. Code offenders who remain incarcerated for serious felonies committed before March 3, 1985. Plaintiffs brought this action challenging the United States Parole Commission's practice of applying to Plaintiffs' parole eligibility determinations the Commission's regulations that were adopted in 2000, instead of the 1972 guidelines of the now-defunct District of Columbia Parole Board, which were in effect when Plaintiffs committed their offenses. After over five years of litigation, which included a successful appeal by Plaintiffs to the D.C. Circuit, the parties reached a Settlement Agreement on December 18, 2015. Under the settlement's terms, the Commission agreed that it would hold remedial parole hearings for Plaintiffs and, "in good faith," apply to those proceedings a newly adopted Commission regulation that incorporated key elements of the 1972 guidelines. Additionally, the parties stipulated that this District Court would maintain jurisdiction over the matter to enforce the terms of the agreement.

Plaintiffs now have returned to court because they assert that the Commission is in breach of the Settlement Agreement. They contend that, contrary to the Settlement Agreement, the Commission is not in good faith applying the criteria for parole determinations contained in the

1972 guidelines. Additionally, they contend that the Commission is acting contrary to the 1972 guidelines by routinely scheduling rehearings more than one year into the future for Plaintiffs who were denied parole. Plaintiffs have moved to compel the Commission to comply with the Settlement Agreement and to adhere to the 1972 guidelines.

After considering the parties' legal memoranda and the record, the court finds that: (1) the record does not support Plaintiffs' assertion that the Board is not faithfully applying the 1972 guidelines when making parole determinations, but (2) that the Commission, by regularly setting parole rehearing dates more than one year after denying a Plaintiff parole, is acting inconsistently with the 1972 guidelines. Accordingly, for the reasons that follow, the court grants in part and denies in part Plaintiffs' Motion to Enforce Settlement Agreement, ECF No. 81.

## I. BACKGROUND

### A. Case History

#### 1. *Genesis of this Action*

This case dates back to 2010, when Plaintiffs[1] filed a class action on behalf of themselves and similarly situated prisoners against Defendants, who are members of the United States Parole Commission ("Commission," and collectively, "Defendant"). Plaintiffs are individuals who were convicted of serious felonies under the D.C. Code that occurred before March 3, 1985, have completed their minimum sentences, and thus are eligible for parole. Pls.' Mem. in Support of Motion to Enforce Settlement Agreement, ECF No. 82 (under seal) [hereinafter Pls.' Mem.], at 1. This action challenged the Commission's application of parole rules created in 2000, rather than the

---

[1] For ease of reference, the court in this opinion uses the term "Plaintiffs" to refer to the group of D.C. Code offenders to whom the Settlement applies and who have not been paroled since the Settlement's effective date. The original plaintiffs' claims are now moot, but the court permitted Stanley Grayson and Kevin Smith to be substituted as the named plaintiffs and as putative class representatives. *See Daniel v. Grayson*, 310 F.R.D. 5, 9 (D.D.C. 2015). Grayson and Smith were denied parole and remain incarcerated and therefore have standing to seek enforcement of the Settlement Agreement. *See* Pls.' Mem. in Support of Motion to Enforce Settlement Agreement, ECF No. 82 (under seal), at 1.

rules that were in place at the time of Plaintiffs' offenses, as violating the Ex Post Facto Clause of the Constitution and Plaintiffs' due process rights. *See* Am. Compl., ECF No. 50, ¶¶ 1–7, 190–214.

At the time of Plaintiffs' offenses, the District of Columbia Board of Parole ("D.C. Board") administered parole for persons convicted of violations of the D.C. Code and did so using parole guidelines that it issued in 1972. *Id.* ¶¶ 4–6, 20; *see* 9 D.C.R.R. §§ 105.1, 103 (1972).[2] Congress, however, eliminated the D.C. Board in 1997 and tasked the Commission with making parole decisions for persons convicted of violations of District of Columbia law. Pub. L. 105-33, § 11231(a), (b); Am. Compl. ¶¶ 22–23. Subsequently, the Commission adopted a new set of guidelines in 2000 and began applying them to Plaintiffs as they became eligible for parole.

In the Complaint, Plaintiffs objected to the Commission's use of the 2000 guidelines out of concern that those rules would inappropriately prolong their incarceration because they were more punitive than the 1972 guidelines. *See* Am. Compl. ¶¶ 52–54, 56, 62, 69. Plaintiffs alleged that the 2000 guidelines made it "impossible for an offender convicted of a violent crime resulting in death to be found suitable for parole at the initial hearing," and that such offenders were "presumed non-suitable for parole" until they served substantial periods of time beyond their minimum sentences. *Id.* ¶¶ 87–88. By contrast, they maintained that under the 1972 guidelines, an offender could be paroled after serving the minimum sentence. *Id.* ¶ 88. Plaintiffs also alleged that decisions using the 2000 guidelines placed greater weight on disciplinary infractions committed during their incarceration, as compared to the emphasis placed on that factor under the 1972 guidelines. *Id.* ¶¶ 54, 95, 97.

The trial court dismissed the Complaint, but the D.C. Circuit reversed. *See Daniel v. Fulwood*, 766 F.3d 57 (D.C. Cir. 2014). The Circuit held that Plaintiffs had pleaded sufficient

---

[2] All citations to D.C. Rules and Regulations are to the 1972 version.

facts to give rise to the "reasonable inference that the 2000 Guidelines create a significant risk of prolonging [Plaintiffs'] incarceration in comparison to the 1972 Guidelines." *Id*. at 66.

2. *Proceedings Following Remand*

Following remand, and after a period of notice and comment, the Commission promulgated a new regulation, 28 C.F.R. § 2.80(p), that would apply to Plaintiffs ("New Regulation"). The New Regulation, which took effect on October 19, 2015, requires the Commission to apply the factors set forth in the D.C. Board's 1972 guidelines when making parole determinations for persons convicted of violations of the D.C. Code that occurred on or before March 3, 1985. *See* 28 C.F.R. § 2.80(p)(4). The New Regulation accomplishes this by copying, nearly verbatim, the text of the 1972 guidelines. *Compare* 28 C.F.R. § 2.80(p)(4)–(5), *with* 9 D.C.R.R. §§ 105.1, 103; *see also* Def.'s Opp'n, ECF No. 88, at 1 (noting that the adopted rule "modelled the 1972 guidelines verbatim"). Thus, with regard to parole suitability criteria, the New Regulation applicable to Plaintiffs provides:

> (4) Factors considered: Among others, the U.S. Parole Commission takes into account some of the following factors in making its determination as to parole:
>
> (i) The offense, noting the nature of the violation, mitigating or aggravating circumstances and the activities and adjustment of the offender following arrest if on bond or in the community under any pre-sentence type arrangement.
> (ii) Prior history of criminality, noting the nature and pattern of any prior offenses as they may relate to the current circumstances.
> (iii) Personal and social history of the offender, including such factors as his family situation, educational development, socialization, marital history, employment history, use of leisure time and prior military service, if any.
> (iv) Physical and emotional health and/or problems which may have played a role in the individual's socialization process, and efforts made to overcome any such problems.
> (v) Institutional experience, including information as to the offender's overall general adjustment, his ability to handle interpersonal relationships, his behavior responses, his planning for

> himself, setting meaningful goals in areas of academic schooling, vocational education or training, involvements in self-improvement activity and therapy and his utilization of available resources to overcome recognized problems. Achievements in accomplishing goals and efforts put forth in any involvements in established programs to overcome problems are carefully evaluated.
>
> (vi) Community resources available to assist the offender with regard to his needs and problems, which will supplement treatment and training programs begun in the institution, and be available to assist the offender to further serve in his efforts to reintegrate himself back into the community and within his family unit as a productive useful individual.

28 C.F.R § 2.80(p)(4). Notwithstanding this detailed set of six factors, the New Regulation, like the 1972 guidelines, provides no direction on how to evaluate or weigh these criteria.

The New Regulation also adopts the D.C. Board's rule with respect to setting a subsequent parole hearing, or "rehearing," after the denial of parole. If the Commission denies an applicant parole, the Commission must schedule a "rehearing" to consider anew the person's suitability for parole. The time between the hearing at which parole is denied and the subsequent hearing is known as a "set-off." With respect to the setting of rehearings, the New Regulation tracks nearly verbatim the 1972 Guidelines:

> (5) A prisoner who committed the offense of conviction on or before March 3, 1985 who is not incarcerated as a parole violator and is serving a maximum sentence of five years or more who was denied parole at their original hearing ordinarily will receive a rehearing one year after a hearing conducted by the U.S. Parole Commission. In all cases of rehearings, the U.S. Parole Commission may establish a rehearing date at any time it feels such would be proper, regardless of the length of sentence involved. No hearing may be set for more than five years from the date of the previous hearing.

28 C.F.R. § 2.80(p)(5). *Compare id.*, *with* 9 D.C.R.R. § 103 ("Prisoners serving a maximum sentence of five years or more who were denied parole at their original parole hearing ordinarily will receive a hearing one year after the last action taken by the Board."). Thus, like the D.C. Board's 1972

5

regulations, the New Regulation requires the Commission to "ordinarily" impose a one-year set-off following the denial of parole.

3. *Settlement and Aftermath*

On December 18, 2015, about two months after the New Regulation went into effect, the parties entered into a Settlement Agreement that ended this litigation. *See* Stip. of Settlement and Dismissal, ECF No. 77 [hereinafter Settlement Agreement]. The Agreement calls for the Commission to apply the New Regulation, which, as explained above, replicates in key respects the 1972 guidelines. *Id.* at 1–2. Furthermore, the Commission promised to give new parole hearings, in which it would apply the New Regulation and, thus, the 1972 guidelines as incorporated, to the named plaintiffs and all similarly situated D.C. Code offenders. *Id.* The Commission agreed that, when considering Plaintiffs' parole applications, it would "in good faith" apply the 1972 guidelines. *See id.* at 2. Plaintiffs, in turn, agreed to dismiss their complaint. *Id.* at 5. The court approved the settlement on February 10, 2016. *Id.*

After the Settlement, the Commission made parole decisions as to 56 individuals. Generally speaking, the parole-determination process involves three steps. At the first step, a single hearing examiner conducts an in-person parole hearing on behalf of the Commission, at which she takes testimony, accepts evidence, and asks questions. *See* 28 C.F.R. § 2.72; Pls.' Mem. at 4–5 n.3. The hearing examiner drafts a summary of the hearing and makes a recommendation to the Commission. *See* 28 C.F.R. §§ 2.72, 2.80. At the second step, a second examiner conducts an Executive Review of the hearing examiner's recommendation and indicates her agreement or disagreement. *See* Pls.' Mem. at 4–5 n.3. At the final step, the Commission reviews the hearing examiner's findings and parole recommendation. 28 C.F.R. § 2.74(a), (c). "[O]rdinarily" within 21 days of the hearing, the Commission is required to issue a written "notice of action" that

6

contains the Commission's decision and "an explanation of the reasons for the decision." *Id.* § 2.74(a). The Commission has the final say whether to grant or deny parole, and its decision is not subject to review by a federal court. *See* 18 U.S.C. § 4218(d); *Cole v. Fulwood*, 879 F. Supp. 2d 60, 68 (D.D.C. 2012).

In this case, the hearing examiners recommended parole for 23 of the 56 applicants. Joint Suppl. Filing, ECF No. 96, at 2. However, of the 23 recommended for parole, the Commission rejected the recommendation and denied parole for 13; it accepted the recommendation of parole for the remaining 10. *Id.* The named plaintiffs in this case—Kelvin Smith and Stanley Grayson— are two of the 13 who received favorable recommendations but were not paroled. Pls.' Mem. at 6–7. In total, the Commission granted parole to 19 of the 56 Plaintiffs, and denied parole to the remaining 37. Def.'s Opp'n at 4. Of the 37 persons denied parole, only four were granted a one-year set-off.[3] Pls. Mem., Ex. 2, ECF No. 82-1, at 1. The rest received two-, three- or five-year set-offs. *Id*.

### 4. *The Motion to Enforce*

On April 27, 2017, Plaintiffs filed the present Motion to Enforce in which they allege that the Commission is violating the Settlement Agreement by "fail[ing] to apply the 1972 guidelines in good faith." *See* Pls.' Mem. at 5; Mot. to Enforce Settlement Agreement, ECF No. 81. They claim that the Commission is breaching the Agreement in two ways. First, Plaintiffs maintain that the Commission is not applying the 1972 regulations' suitability factors to its parole determinations. *See* Pls.' Mem. at 5–10. And, second, they argue that the Commission is acting in bad faith by routinely imposing set-offs of two years or more, rather than the one-year set-off that the 1972 guidelines say are to be "ordinarily" granted. *See id.* at 9–10.

---

[3] The four prisoners who received the one-year set-offs have since been released or granted parole. Def.'s Notice of Filing, ECF No. 93, at 1–2; Hr'g Tr. (draft), Nov. 20, 2017, at 4. As to them, this motion is moot.

As a remedy for these breaches, Plaintiffs ask the court to require the Commission to: (1) "explicitly explain" its decisions under each of the factors in the 1972 guidelines when denying parole; (2) spell out its disagreements with hearing examiners' recommendations in such cases; (3) state what a prisoner "can or should do to qualify for parole in the future"; and (4) schedule one-year set-offs for all Plaintiffs denied parole, unless the prisoner has a recent disciplinary violation. *Id.* at 11–12.

## III. DISCUSSION

The Settlement Agreement requires the Commission to apply "in good faith" the provisions of the 1972 guidelines incorporated into the New Regulation, but it does not define the term "good faith." *See* Settlement Agreement at 2. So, to give meaning to that term, the court looks to the law of the District of Columbia, which the parties agreed would govern disputes arising out of the Settlement. *Id.* at 6; *Makins v. District of Columbia*, 277 F.3d 544, 547 (D.C. Cir. 2002) (noting that state contract law governs the enforcement of settlement agreements). Under District of Columbia law, the "[g]ood faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006) (quoting Restatement (Second) of Contracts § 205 (1981)). "Bad faith," on the other hand, "involves 'evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.'" *Id.* (quoting Restatement (Second) of Contracts § 205 cmt. d). Bad faith is more than mere negligence, however. *Id.*

With these principles in mind, the court considers the two ways in which Plaintiffs contend the Commission has not applied the New Regulation "in good faith."

8

## A. Failure to Apply the 1972 Guidelines' Parole Suitability Factors

Plaintiffs first contend that the Commission breached the Settlement Agreement by applying the Commission's parole suitability criteria under its 2000 regulation, *see* 28 C.F.R. § 2.73, instead of the six factors in the 1972 guidelines, as replicated in the New Regulation. *See* Pls.' Mem. As evidence of the Commission's breach, Plaintiffs point to: (1) the frequency with which the Commission has rejected hearing examiners' recommendations to grant parole; (2) the Commission's notice of actions in those cases, which, in Plaintiffs' view, assign undue weight to disciplinary violations and Plaintiffs' offenses of conviction; and (3) the Commission's otherwise cursory explanations when denying parole. *See* Pls.' Mem. at 5–10; *see also* Pls.' Suppl. Mem., ECF No. 96, Exs., ECF No. 96-1 [hereinafter Parole Hr'g Records].

Having reviewed the entire record, the court finds that none of this evidence, whether considered individually or collectively, establishes the Commission's lack of good faith in applying the 1972 guidelines' parole suitability factors.

### 1. *The Commission's Rejection of Parole Recommendations*

To begin, Plaintiffs point out that in a majority of instances where hearing examiners recommended parole—13 of 23 instances, to be precise—the Commission rejected those recommendations and denied release. Pls.' Mem. at 5; Pls.' Reply to Def.'s Opp'n, ECF No. 89 [hereinafter Pls.' Reply], at 4; Joint Suppl. Filing at 2. Plaintiffs assert that these adverse decisions "suggest that most Hearing Examiners conscientiously attempted to apply the 1972 guidelines . . . [but] this unfortunately was *not* the case when the defendant Commissioners themselves . . . decided the parole requests of Plaintiffs." Pls.' Mem. at 4.

The proffered empirical evidence, however, falls short of establishing that the Commission is not acting in good faith. The present rate at which the Commission has rejected parole

9

recommendations tells the court little about the Commission's good faith in adhering to the New Regulation because the court has no historical, statistical data against which to compare the Commission's actions. Critically, the court does not have before it any evidence about the rate at which the D.C. Board granted parole to D.C. Code offenders who, like Plaintiffs, were convicted of the most serious felony offenses, when it was operating under the 1972 guidelines. The D.C. Board may have granted parole at a greater or lesser rate to such persons. The court simply does not know. The court therefore cannot find, based solely on the Commission's present rate of rejecting hearing examiner recommendations, that the Commission has not in good faith applied the 1972 guidelines.[4]

2. *Giving Undue Weight to the Offense of Conviction and Disciplinary History*

Next, as evidence of breach, Plaintiffs assert that the Commission's parole decisions have assigned too much weight to the nature of their offenses and to dated disciplinary infractions, relative to other factors from the 1972 guidelines. Pls.' Mem. at 10; Reply at 4. To illustrate, Plaintiffs point to Plaintiff Smith's and Plaintiff Grayson's unsuccessful parole applications. In Smith's case, the hearing examiner recommended parole in part based on the absence of any disciplinary issues since 2004 and Smith's completion of several programs while incarcerated. Pls.' Mem. at 6. Yet, in denying Smith's petition for parole, the Commission remarked on Smith's older disciplinary incidents and noted that his offense was "highly aggravated." *Id.* Similarly, Grayson's hearing examiner noted that Grayson had no disciplinary incidents for more than two decades and had worked to improve himself while incarcerated, including by developing work

---

[4] Although 19 of the 56 prisoners who qualified for and received a parole hearing under the 1972 guidelines received parole following their initial parole hearing, the parties only explain the circumstances of 10 of the 19 successful parole applicants—the 10 who received parole recommendations from hearing examiners which were then accepted by the Commission. *See* Joint Suppl. Filing at 2; *see generally* Def.'s Opp'n; Pls.' Mem. Neither party explains the circumstances of the nine others who apparently were granted parole under the New Regulation.

skills. *Id.* at 7. But the Commission denied Grayson's application for parole, explaining that, although Grayson had "shown some improvement" while incarcerated, he was a "more serious risk for release to the community" because of his offenses and prior disciplinary offenses, which included assaulting a correctional officer. Pls.' Mem., Ex. 4, ECF No. 82-1 (under seal), at 4; Pls.' Mem. at 7–8.

The court is not persuaded by Plaintiffs' argument for two reasons. First, the 1972 guidelines granted the D.C. Board broad discretion in deciding whether to grant parole, and the Commission inherited that discretion through the near-verbatim adoption of those guidelines. *See Austin v. Reilly*, 606 F. Supp. 2d 4, 9 (D.D.C. 2009) (describing the D.C. Board's paroling authority as "almost unbridled" and "totally unfettered" (citations omitted)). Although the 1972 guidelines enumerated six factors for the D.C. Board to consider, it gave no instruction as to how to evaluate or weigh them. As the D.C. Circuit stated when this case was on appeal: "The 1972 Guidelines contained no prescribed method for 'translat[ing] the factors into a parole release date.'" *Daniel*, 766 F.3d at 59 (quoting *Phillips v. Fulwood*, 616 F.3d 577, 579 (D.C. Cir. 2010)); *see also Austin*, 606 F. Supp. 2d at 9 (observing that the D.C. Board's guidelines "had no formalized scoring system" (quoting *Davis v. Henderson*, 652 A.2d 634, 635 (D.C. 1995)). Additionally, the 1972 guidelines did not limit the D.C. Board's evaluation to six factors. In a preamble to its listing the suitability criteria for parole, the 1972 guidelines provided: "*Among others*, the Board takes into account *some* of the following factors in making its determination as to parole[.]" 9 D.C.R.R. § 105.1 (emphasis added). Thus, the 1972 guidelines made clear that the D.C. Board could consider factors other than those listed, as well as select the most relevant factors on a case-by-case basis. In the end, the 1972 guidelines textually prescribed no particular formula for parole

decisions by the D.C. Board, and that remains true today as the Commission applies the Board's criteria under the New Regulation.

Second, Plaintiffs have provided no evidence of the D.C. Parole Board's practice in applying the parole eligibility factors to a similar class of offenders. *See Garner v. Jones*, 529 U.S. 244, 256 (2000) (noting that the practices and policies of an agency, such as a state parole board, often will reveal how the agency exercises its discretion). The closest Plaintiffs come to doing so is in a sworn declaration from Walter Ridley, the chairman of the Board from 1985 to 1986, who states that historically the Board made parole decisions based on whether there was a "reasonable probability" that the applicant would not commit future crimes and whether release was "not incompatible with the welfare of society." Pls.' Mem., Ex. 1, ECF No. 82-1 [hereinafter Ridley Decl.], at 2. But in so stating, Ridley does no more than quote verbatim the statutory criteria for parole, as set forth in the 1972 guidelines. *See* 9 D.C.R.R. § 105. Such an attestation is of no value in trying to discern whether the Commission has applied the New Regulation in a materially different way than the D.C. Board. Thus, the court cannot conclude, based on the factors emphasized in the Commission's decisions, that the Commission has breached the Settlement Agreement.

### 3. *The Commission's Explanations for Denial*

Finally, the court considers Plaintiffs' assertion that the Commission's lack of good faith in applying the 1972 guidelines can be inferred from the Commission's terse notices of action rejecting parole recommendations. Plaintiffs complain that, in more than half of the cases in which the Commission rejected hearing examiners' parole recommendations, the Commission did so "without explaining specifically how the Hearing Examiners had misapplied the 1972 guidelines or what factor under those guidelines led the [Commission] to disagree with the Hearing

Examiners' analyses and recommendation." Pls.' Mem. at 10. This lack of transparency, Plaintiffs assert, demonstrates the Commission's lack of good faith.

That argument is unpersuasive. The 1972 guidelines are silent as to how much detail the D.C. Board was required to provide when denying parole, and Plaintiffs have not presented any evidence to fill that void. Indeed, when asking the court to order the Commission to provide greater explanations of its future parole decisions, Plaintiffs acknowledge that "more detailed explanations are not ordinarily required under Defendant's procedures." Pls.' Reply at 8; 28 C.F.R. § 2.74(a) (requiring that the Commission "include[] an explanation of the reasons for the decision" in a notice of action). To be sure, the Commission's decisions—most are just a paragraph—lack the thoughtful, robust analysis that Plaintiffs reasonably would hope to receive given the significance of a parole decision.[5] *See generally* Parole Hr'g Records. However, in the absence of any policy or evidence of practice that the D.C. Board provided fulsome explanations when denying parole, Plaintiffs could not have had a "justified expectation[]" of anything more than they have received. *See Allworth*, 890 A.2d at 200. Therefore, the court does not view the Commission's limited explanations for parole denials as evidence of breach of the Settlement Agreement.

\*    \*    \*

In summary, the court finds that there is insufficient evidence before it to conclude that the Commission has breached the Settlement Agreement by failing to apply in good faith the 1972 guidelines' parole suitability criteria.

---

[5] The Commission acknowledges as much, conceding that, "[i]n some cases, the reasons that were provided to the prisoner may not have been as complete as would be desirable[.]" Def's Opp'n at 7. Moreover, in response to Plaintiffs' lawyers' inquiries regarding the Commission's fulfillment of the Settlement Agreement, the Commission initiated its own review of Plaintiffs' cases and, as a result, "decided to clarify the reasons that it provided for its decision" in seven cases. *Id*. at 4–5; *see also* Def.'s Opp'n, Exs., ECF No. 88-1, at 3–5. The Commission's re-issuance of notices of action with more fulsome explanations underscores the lack of reasoning contained in many notices of action.

### B. Ordering Set-Offs of More than One Year

That leaves the second part of Plaintiffs' motion, in which Plaintiffs claim that the Commission has breached the Settlement Agreement by consistently imposing set-offs of two or more years for Plaintiffs who were denied parole. Plaintiffs support their contention by pointing to numerical evidence of the Commission's set-off decisions. Of the 37 offenders who were denied parole at their first hearing under the 1972 guidelines, the Commission gave one-year set-offs to only four. Pls.' Mem. at 5; *id.*, Ex. 2, ECF No. 82-1 (under seal). The majority—21 of the 37—received three-year set-offs; six received two-year set-offs; and six received five-year set-offs. Pls.' Mem. at 5. In addition, Plaintiffs offer Ridley's sworn statement to buttress their position. According to Ridley, the Board "very seldom" scheduled set-offs for greater than one year following a denial of parole; it imposed a longer period until the rehearing date "only if the person had serious disciplinary infractions or other institutional problems since their last parole hearing." Ridley Decl. at 1–2. Ridley further states that "[w]e did not consider the severity of an individual's original offense" in determining the set-off term. *Id.* at 2. Accordingly, based on the empirical evidence presented and Ridley's declaration, Plaintiffs assert that the Commission is not "ordinarily" imposing one-year set-offs after denying parole to Plaintiffs, as the New Regulation and the 1972 guidelines require it to do. 9 D.C.R.R. § 103; *see also* 28 C.F.R. § 2.80(p)(5).

On this issue, the court agrees with Plaintiffs. Unlike the open-ended factors analysis for parole determinations, the 1972 guidelines provided clear direction on the scheduling of set-offs. The rule was that offenders, like Plaintiffs, serving maximum sentences of five years or more who were denied parole "ordinarily will receive a rehearing one year after the last action taken by the Board." 9 D.C.R.R. § 103. The Commission's New Regulation modifies that text slightly by demarcating the start time of the set-off as "after a hearing conducted by the U.S. Parole

Commission," instead of "after the last action taken." But, importantly, the New Regulation maintains the presumptive one-year set-off, as it provides that those persons denied parole "ordinarily will receive a hearing one year after a hearing conducted by the U.S. Parole Commission." 28 C.F.R. § 2.80(p)(5). By employing the word "ordinarily," both the 1972 guidelines and the New Regulation require one-year set-offs to be the norm rather than the exception. *See, e.g.*, *Ordinary*, Black's Law Dictionary (10th ed. 2014) ("Occurring in the regular course of events; normal; usual."). Despite this clear directive, as applied to these Plaintiffs, one-year set-offs have been the *rare* exception and not the norm, as the numbers bear out. In fact, less than 11% of Plaintiffs who were denied parole in their hearing under the New Regulation received a one-year set-off. Moreover, the Commission offers no evidence to contradict Ridley's testimony that the D.C. Board's practice was to impose a longer set-off only in cases of recent institutional misconduct. In short, the record before the court leads to one clear conclusion: The Commission has not applied the 1972 guidelines in good faith when setting rehearing dates.

The Commission's defense of its decision-making is unconvincing. First, the Commission argues that the 1972 guidelines granted the D.C. Board discretion in how long to fix a set-off. The Commission points to a portion of the 1972 guidelines, which provides that, "[i]n all cases of rehearings, the Board reserves to itself the right to establish a rehearing date at any time it feels such would be proper, regardless of the length of the sentence served involved or the time remaining to be served." 9 D.C.C.R. § 103. The New Regulation contains identical language. *See* 28 C.F.R. § 2.80(p)(5) ("In all cases of rehearings, the U.S. Parole Commission may establish a rehearing date at any time it feels such would be proper, regardless of the length of sentence involved."). The Commission's present position, however, directly contradicts its own publicly acknowledged understanding of how the 1972 guidelines operated. During the notice and

comment period for the New Regulation, the Commission received from "[m]any commenters" a recommendation "that the rule include the provision in the D.C. Board's 1972 regulations that called for *annual* rehearings." *Paroling, Recommitting, and Supervising Federal Prisoners: Prisoners Serving Sentences Under the United States and District of Columbia Codes*, 80 Fed. Reg. 63,115-01, 63,115 (Oct. 19, 2015) (emphasis added). The Commission responded to that recommendation by stating: "The final rule *restates* the D.C. Board's regulation calling for *annual* rehearings as suggested, but includes the portion of the D.C. Board's regulation that permits the Commission to establish a rehearing date 'at any time it feels such would be proper.'" *Id.* (emphasis added). The Commission's response to public comments is telling. It makes clear that the Commission interprets and understands the New Regulation to incorporate the D.C. Board's practice of holding annual rehearings, while still retaining some discretion to deviate from that norm. The Commission cannot announce one position to the public during the rulemaking process and then take another during litigation. *Cf. Encino Motorcars, LLC v. Navarro,* 136 S. Ct. 2117, 2125 (2016) (observing in the context of an Administrative Procedure Act challenge, "[a]gencies are free to change their existing policies as long as they provide a reasoned explanation for the change").

Defendant's second argument—that Plaintiffs present exceptional cases that justify deviating from typical one-year set-offs—also is unpersuasive. Defendants suggest that the multi-year set-offs given to the 33 Plaintiffs is warranted even under the New Regulation because those Plaintiffs are "an extraordinary group based upon their violent conduct, lengthy criminal records, or violent records while in prison." Def.'s Opp'n at 8. But that logic is circular: This group is subject to the 1972 guidelines precisely because they were convicted for violent conduct that resulted in lengthy prison sentences. After all, Plaintiffs would not still be incarcerated this many

16

decades later if they had been convicted of lesser crimes. Plaintiffs cannot both be subject to the 1972 guidelines because of their offenses, yet be told by the Commission that those guidelines do not really apply to them.[6] Additionally, the Commission contends that this group of Plaintiffs "*may be* the exception to the rule the Board had in mind when it promulgated the exception to the 12-month rule." *Id*. (emphasis added). Nothing in the 1972 guidelines, however, supports such a reading. And the only evidence before the court is to the contrary. Ridley states that the D.C. Board "did not" consider the severity of the original offense when making the set-off decision. Ridley Decl. at 2. Accordingly, Defendant has not proffered a persuasive justification for consistently imposing longer set-offs in Plaintiffs' cases.

\*    \*    \*

What then does this all mean for Plaintiffs who received set-offs of greater than one year? The court reads the Settlement Agreement as having granted each Plaintiff, through the New Regulation, an "original" parole hearing under the 1972 guidelines. *See* 28 C.F.R. § 2.80(p)(1); Settlement Agreement ¶ 3. Under both the New Regulation and the 1972 guidelines, Plaintiffs who were not granted parole at these hearings are presumptively entitled to receive a "rehearing one year after [the original] hearing conducted by the U.S. Parole Commission." 28 C.F.R. § 2.80(p)(5). For all Plaintiffs who fall into that category, that year has now passed. Therefore, as to those Plaintiffs who are not yet paroled and who received set-offs of greater than one year but have not yet received a rehearing, the Commission shall hold rehearings for them as soon as practicable. Only Plaintiffs who have had verifiable disciplinary

---

[6] Nor does the group's institutional disciplinary history explain the longer set-offs. The records show that the Commission imposed longer set-offs even to prisoners whose disciplinary violations are old or nonviolent, or who had no disciplinary problems. *See* Parole Hr'g Records at 29–30, 33 (giving prisoner a three-year set-off despite no disciplinary violations during his more than three decades in prison); *id*. at 64, 69 (giving prisoner a three-year set-off despite only one disciplinary violation, for possessing pornography, from two or three years earlier).

17

problems since their original hearing are not subject to the presumptive scheduling of a rehearing after one year. At those rehearings, the Commission shall apply the parole suitability factors set forth in the 1972 guidelines and 28 C.F.R. § 2.80(p)(4). The parties shall file a Status Report within 45 days in which it updates the court on the scheduling and holding of the ordered rehearings for eligible persons.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Enforce is granted in part and denied in part. A separate Order accompanies this Memorandum Opinion.

Dated: February 13, 2018

Amit P. Mehta
United States District Judge